JOSEPH T. COACHMAN, Appellant, v. WILLIE GOULD, Appellee.

No. COA95-103

(Filed 21 May 1996)

**Husband and Wife §§ 52, 58 (NCI4th)— criminal conversation—alienation of affections—insufficiency of evidence**

The trial court properly granted summary judgment for defendant on plaintiff's claims of criminal conversation and alienation of affections where the evidence was insufficient to show sexual intercourse between defendant and plaintiff's wife or an opportunity for sexual intercourse; the only possible evidence of malicious acts producing the alleged alienation of affections was defendant's phone calls to plaintiff's wife; those phone calls were allegedly for business purposes, which plaintiff did not refute; and plaintiff's request that defendant not call his wife, which apparently was ignored by defendant, did not cause the calls to rise to the level of maliciousness required to satisfy this element of plaintiff's claim.

**Am Jur 2d, Husband and Wife §§ 278, 279.**

**Element of causation in alienation of affections action. 19 ALR2d 471.**

**Attachment in alienation of affections or criminal conversation case. 67 ALR2d 527.**

Appeal by plaintiff from summary judgment entered 13 June 1994 by Judge Robert L. Farmer, in Cumberland County Superior Court. Heard in the Court of Appeals 9 January 1996.

*The Lee Law Firm, P.A., by C. Leon Lee, II, for plaintiff appellant.*

*No brief filed for defendant appellee.*

SMITH, Judge.

In this case, plaintiff appeals from summary judgment against him on his claims of alienation of affections and criminal conversation. Our review of the record indicates plaintiff has failed to produce competent evidence sufficient to establish the elements of a claim for alienation of affections, thus it fails as a matter of law. As plaintiff's claim of criminal conversation rests on nothing more than mere conjecture, it too fails as a matter of law.

Plaintiff and Annie Jean Williams Coachman (Annie Jean) were married on 17 October 1988, separated on 16 August 1991, and divorced on 5 March 1993. Prior to the events which gave rise to this case, plaintiff maintains he and his wife had a marriage "filled with warmth and happiness." Plaintiff describes "[t]he atmosphere in the home [as] such that [his] family was often compared to the family portrayed in a popular Bill Cosby television sitcom." This tranquil atmosphere proved transient, however, when plaintiff began to sense that his wife's affections were turning elsewhere.

Plaintiff's suspicions that his wife was having an extra-marital affair arose after overhearing multiple telephone conversations between his wife and defendant. Plaintiff states that defendant would call his wife at the marital residence almost every evening, with the phone calls lasting fifteen to forty-five minutes. Based on the context of the conversations between defendant and plaintiff's wife, the tone of their discussion, and the frequency of the calls, plaintiff concluded that the relationship between defendant and Annie Jean was not platonic.

Defendant maintains that his phone calls to Annie Jean were of a business nature. According to defendant, his calls to Annie Jean were to discuss janitorial contracts between his company, "G & H Building Maintenance," and Annie Jean's company, "Shipshape Janitorial." During the period of the alleged telephone conversations, defendant maintains his residence was in Florida, which meant that he had to call Annie Jean in order to conduct business with her in North Carolina. Plaintiff chose to tolerate defendant's phone calls, (calls plaintiff then believed were inappropriate) until May of 1990, at which time he told defendant, over the telephone, to "please stop call-

ing my house. Annie Jean is my wife." According to plaintiff, defendant told him that the calls would continue until Annie Jean requested that he stop.

Defendant has a different version of these events. Defendant states that he did not know Annie Jean was married during the period at issue. Defendant also maintains plaintiff did not identify himself as Annie Jean's husband during their phone conversation. Moreover, defendant states that Annie Jean told him that the person he spoke to on the phone was a repairman, and that the conversation should be ignored.

Shortly after his phone conversation with defendant, plaintiff asserts his marriage began to deteriorate. Arguments between plaintiff and his wife centered on the continuing phone calls of defendant to the marital home. Plaintiff asserts that defendant's relationship with Annie Jean led to a dearth of physical intimacy, as Annie Jean began to "spurn all physical contact with her husband." One evening in 1992, plaintiff alleges Annie Jean told him that she had not "been with" defendant in six or seven months. Plaintiff interpreted "been with" as meaning that Annie Jean and defendant had engaged in sexual relations six or seven months prior. According to plaintiff, this "admission" by Annie Jean was made while she was "in a medicated stupor," thus "[plaintiff did not] even believe [Annie Jean] realized what she was saying. . . . [S]he'd be sitting up and she'd go to sleep."

Plaintiff's only evidence of Annie Jean and defendant actively engaging in social contact occurred when plaintiff returned home at an unusual hour during the day. Plaintiff had left his home to assist his daughter, who had run out of gas at Fort Bragg, and upon return to the Coachman residence, he observed his wife leaving with defendant in an automobile. Plaintiff was unable to establish the date on which this purported rendezvous occurred, where Annie Jean and defendant had been, or what they had been doing.

Defendant admits to a prior intimate relationship with Annie Jean, which lasted five or six years and ended sometime in 1987 or 1988. This relationship took place after Annie Jean separated from her first husband, and defendant maintains the relationship ended prior to the phone calls which led, in part, to this litigation.

The fact that this relationship occurred, and possibly overlapped a period in which plaintiff and Annie Jean were married (plaintiff and Annie Jean married in October of 1988), is legally irrelevant. "For

criminal conversation, or for any other injury [including alienation of affections] to the person or rights of another, not arising on contract and not hereafter enumerated," the statute of limitations is three years. N.C. Gen. Stat. § 1-52(5) (1983 & Cum. Supp. 1995). Since this particular relationship allegedly occurred in 1988 at the latest, and plaintiff's complaint was not filed until 1993, the statute of limitations bars this act from constituting a cause of action relevant to the instant case.

Plaintiff asserts the trial court erred in granting summary judgment for defendant on plaintiff's claims of criminal conversation and alienation of affections. To sustain summary judgment, defendant, as the moving party, must show that no material facts are in dispute and that he is entitled to judgment as a matter of law. *Moore v. City of Creedmoor*, 120 N.C. App. 27, 36, 460 S.E.2d 899, 904-05 (1995). In addition, the record is to be viewed in the light most favorable to the non-movant, giving him the benefit of all inferences which reasonably arise therefrom. *Id.* Evidence properly considered on a motion for summary judgment "includes admissions in the pleadings, depositions on file, answers to Rule 33 interrogatories, admissions on file . . . affidavits, and any other material which would be admissible in evidence or of which judicial notice may properly be taken." *Kessing v. Mortgage Corp.*, 278 N.C. 523, 533, 180 S.E.2d 823, 829 (1971).

To withstand defendant's motion for summary judgment on his claim of criminal conversation, plaintiff must present evidence demonstrating: "(1) marriage between the spouses and (2) sexual intercourse between defendant and plaintiff's spouse during the marriage." *Chappell v. Redding*, 67 N.C. App. 397, 401, 313 S.E.2d 239, 241, *disc. review denied*, 311 N.C. 399, 319 S.E.2d 268 (1984). While it is undisputed that plaintiff and Annie Jean were married, plaintiff has nevertheless failed to present evidence sufficient to establish the second element of criminal conversation, to wit: proof of sexual intercourse between defendant and Annie Jean.

Plaintiff has presented no direct evidence of sexual intercourse between defendant and Annie Jean. The circumstantial evidence presented by plaintiff consists of: phone calls between defendant and Annie Jean; an ambiguous statement by Annie Jean that she had "been with" defendant (which is subject to multiple interpretations, especially since Annie Jean was in a "medicated stupor" when the statement was made); and a car ride which plaintiff observed. We

have previously stated that evidence of sexual intercourse must rise to more than " 'mere conjecture'." *Chappell*, 67 N.C. App. at 401, 313 S.E.2d at 242 (quoting *Horney v. Horney*, 56 N.C. App. 725, 727, 289 S.E.2d 868, 869 (1982)).

Our Supreme Court has noted that, "given the fact-specific nature of these types of cases . . . the [analytical] language used by the court must be considered in light of the facts of each case." *In Re Estate of Trogdon*, 330 N.C. 143, 150, 409 S.E.2d 897, 901 (1991). The *Trogdon* Court emphasized that:

> Where adultery is sought to be proved by circumstantial evidence, resort to the opportunity and inclination doctrine is usually made. Under this doctrine, adultery is presumed if the following can be shown: (1) the adulterous disposition, or inclination, of the parties; and (2) the opportunity created to satisfy their mutual adulterous inclinations.

*Trogdon*, 330 N.C. at 148, 409 S.E.2d at 900 (citations omitted). Thus, if a plaintiff can show opportunity and inclination, it follows that such evidence will tend to support a conclusion that more than "mere conjecture" exists to prove sexual intercourse by the parties.

Even after viewing the instant facts in the light most favorable to plaintiff, we come to the ineluctable conclusion that the interaction between defendant and Annie Jean, in this legal context, is innocuous, demonstrates no specific opportunity for sexual intercourse, and amounts to no more than "mere conjecture." Certainly, telephone calls and a car ride are not the type of "opportunities" for sexual intercourse intended under the *Trogdon* analysis. *See Trogdon*, 330 N.C. at 151, 409 S.E.2d at 902 (in *Trogdon*, the wife would leave the marital home for days, admitted she and defendant were "living together," and refused to testify about her relationship to defendant.) Since "opportunity" has not been shown through the evidence before us, in the sense indicated by the *Trogdon* Court, there is no need to address the question of whether defendant had an adulterous inclination toward Annie Jean. Thus, under the "mere conjecture" rule enumerated in *Chappell*, and the "opportunity and inclination" test encouraged by *Trogdon*, summary judgment was properly granted defendant on this issue.

Plaintiff's cause of action for alienation of affections requires that he show: (1) that plaintiff and Annie Jean enjoyed a happy marriage, and that genuine love and affection existed between them; (2) that

the love and affection were alienated and destroyed; and (3) that *wrongful and malicious* acts of defendant produced the alienation of affections. *Chappell*, 67 N.C. App. at 399, 313 S.E.2d at 241 (emphasis added). The malicious acts referred to are acts constituting " 'unjustifiable conduct causing the injury complained of.' " *Chappell*, 67 N.C. App. at 400, 313 S.E.2d at 241 (quoting *Heist v. Heist*, 46 N.C. App. 521, 523, 265 S.E.2d 434, 436 (1980)).

Based on our review of the record, the only possible wrongful and malicious instances of conduct by plaintiff are the phone calls made to the marital home by defendant. Two facts prevent us from viewing the phone calls as sufficient evidence of malicious and wrongful conduct. First, plaintiff admits that defendant and his wife had an ongoing business relationship. Thus, defendant allegedly had a valid, inoffensive reason for calling the Coachman home. Given this preexisting business relationship, plaintiff had the burden of forecasting evidence which would demonstrate that the phone calls were not for business purposes, but were for the malicious purpose of alienating the affections of Annie Jean.

The second fact concerns the phone conversation between plaintiff and defendant. When plaintiff spoke to defendant on the phone, he did no more than ask defendant to "[p]lease stop calling my house. Annie Jean is my wife. Please stop calling my house." Plaintiff states that he would listen to Annie Jean talk to defendant for extended periods of time, and that he noted from his long distance bills that numerous collect calls were being made from defendant's residence to Annie Jean at the Coachman residence. Plaintiff describes the telephone conversations as only partially business, the rest he says, was just "talk, talk, talk, talk, talk."

While this evidence may be proof of a gregarious spouse, it cannot be said to rise to the level of malicious conduct by defendant, designed to alienate the affections of Annie Jean. Plaintiff's deposition (in the record) indicates that he gave no reason to defendant as to why he wanted the conversations between Annie Jean and defendant to stop. Plaintiff merely stated that Annie Jean was his wife. Without delving into complicated First Amendment issues, or modern-day interpretations of inter-spousal hierarchies, suffice it to say that Annie Jean had a right to speak to defendant if she chose to do so. There is no indication that the phone conversations were marked by salacious whisperings, plans for clandestine meetings, or any other intonation of improper conduct by defendant.

NATIONWIDE MUT. INS. CO. v. STATE FARM MUT. AUTO. INS. CO.

[122 N.C. App. 449 (1996)]

On these facts, all that exists in the record to show malicious and wrongful conduct is evidence tending to show numerous phone calls from defendant to Annie Jean, and plaintiff's request that defendant not call his wife on the telephone. Even assuming that defendant had no legitimate business reason to call Annie Jean, the calls, in and of themselves, do not rise to the level of maliciousness necessary to satisfy this element of alienation of affections. Plaintiff does not describe the phone calls as harassing, threatening or otherwise improper. Thus, we conclude plaintiff has failed to produce evidence fulfilling all elements of his cause of action. Therefore, his claim of alienation of affections necessarily fails.

Plaintiff's causes of action for criminal conversation and alienation of affections are untenable, as a matter of law, due to plaintiff's failure to forecast sufficient evidence on all elements of his claims. As such, the trial court's grant of summary judgment for defendant on both issues is

Affirmed.

Judges JOHNSON and JOHN concur.