REBECCA P. JONES, Plaintiff v. SUSAN L. SKELLEY, Defendant

No. COA08-387

(Filed 3 March 2009)

**1. Alienation of Affections— subject matter jurisdiction— activity in North and South Carolina**

The trial court erred by granting summary judgment for defendant on an alienation of affections claim based on lack of subject matter jurisdiction where plaintiff lived in South Carolina, which does not recognize alienation of affections, defendant lived in North and South Carolina, and some of the acts occurred in South Carolina and some in North Carolina. When the evidence is viewed in the light most favorable to plaintiff, a material issue of fact exists as to whether the alleged alienation of affections occurred in North or South Carolina, especially given the clandestine phone calls made by defendant to plaintiff's husband, the sexual acts that admittedly and allegedly occurred at defendant's North Carolina condominium, and a trip to North Carolina during which defendant and plaintiff's husband admittedly had sexual intercourse.

**2. Criminal Conversation— subject matter jurisdiction— South Carolina residents—lex loci delicti**

The trial court erred by granting summary judgment for defendant on a criminal conversation claim based on lack of subject matter jurisdiction, and should have granted summary judgment for plaintiff. There was no material question of fact that defendant engaged in sexual intercourse with plaintiff's husband in North Carolina while plaintiff and her husband were still married and prior to the execution of a separation agreement. Although defendant argued that North Carolina has no interest in the sexual relationship of South Carolina residents, the law of the place where the tort was committed controls.

Appeal by plaintiff from an order entered 27 November 2007 by Judge Ola M. Lewis in Brunswick County Superior Court. Heard in the Court of Appeals 22 October 2008.

*Gailor, Wallis & Hunt, P.L.L.C., by Kimberly A. Wallis and Jaime H. Davis, for plaintiff-appellant.*

*Jess, Isenberg & Thompson, by Laura E. Thompson, for defendant-appellee.*

HUNTER, Robert C., Judge.

Rebecca P. Jones ("plaintiff") appeals from an order granting summary judgment in favor of defendant Susan L. Skelley ("defendant") and dismissing plaintiff's claims for alienation of affections and criminal conversation based on lack of subject matter jurisdiction. After careful review, we reverse and remand.

## I.

### Background

On 16 March 2006, plaintiff filed a complaint against defendant in Brunswick County Superior Court asserting claims for alienation of affections and criminal conversation. On 1 November 2007, plaintiff filed a motion for summary judgment as to her criminal conversation claim. On 13 November 2007, defendant filed a motion for summary judgment seeking dismissal of plaintiff's claims for lack of subject matter jurisdiction, or in the alternative, for an order granting defendant's motion for the application of South Carolina law. At the motions hearing, defendant conceded that she had stipulated to personal jurisdiction.[1] However, defendant argued, *inter alia*, that because the majority of her alleged acts which purportedly alienated the affections of plaintiff's spouse, Phil V. Jones ("Mr. Jones"), occurred in South Carolina, and because plaintiff lived in South Carolina at all times, any tortious injury had to occur in South Carolina. Because South Carolina does not recognize the tort of alienation of affections, defendant asserted that the trial court lacked subject matter jurisdiction and was required to dismiss the alienation of affections claim. As to the criminal conversation claim, defendant contended that even though she had engaged in sexual intercourse with Mr. Jones in North Carolina in June 2004 while the Joneses were still married, the court lacked subject matter jurisdiction because South Carolina abolished the tort of criminal conversation and any injury or damage would have occurred in South Carolina given that the Joneses were residents of South Carolina.

Plaintiff argued that North Carolina law is clear that for alienation of affections, the tortious injury or harm occurs where a defendant's alienating acts occur and that for criminal conversation, said injury occurs where the sexual intercourse occurs, not where a plaintiff resides. She asserted that because defendant's alienating acts occurred in both North Carolina and South Carolina, there was a

---

1. Defendant also admits to stipulating to personal jurisdiction in this matter on appeal.

material question of fact as to where the tortious injury occurred and consequently, whether North Carolina or South Carolina law applied. As to the criminal conversation claim, plaintiff contended that North Carolina law is clear that a defendant can be liable for a single act of post-separation sexual intercourse with another's spouse in North Carolina, and given that defendant admitted to engaging in sexual intercourse with her husband in North Carolina while they were still married, she, not defendant, was entitled to summary judgment.

The trial court granted summary judgment based on lack of subject matter jurisdiction and dismissed both claims. Plaintiff appeals.

Standard of Review

Under Rule 56, summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."

*Mortgage Co. v. Real Estate, Inc.*, 39 N.C. App. 1, 3, 249 S.E.2d 727, 729 (1978) (citations omitted), *affirmed per curiam*, 297 N.C. 696, 256 S.E.2d 688 (1979).

The burden of establishing the lack of any triable issue of fact is on the party moving for summary judgment, and the movant's papers are carefully scrutinized while those of the opposing party are regarded with indulgence. The movant can satisfy this burden either by proving that an essential element of the opposing party's claim is nonexistent or by showing, through discovery, that the opposing party cannot produce evidence to support an essential element of its claim.

*Id.* at 4, 249 S.E.2d at 729 (citations omitted). While courts must determine if a genuine issue of material fact exists, they are not authorized to decide an issue of material fact. *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 470, 251 S.E.2d 419, 422 (1979). Further, "if there is any question as to the credibility of affiants in a summary judgment motion or if there is a question which can be resolved only by the weight of the evidence, summary judgment should be denied." *City of Thomasville v. Lease-Afex, Inc.*, 300 N.C. 651, 655, 268 S.E.2d 190, 193-94 (1980) (citations omitted). In ruling on a motion for summary judgment, " ' "the evidence is viewed in the light most favorable to the non-moving party," and all inferences of fact must be drawn against the movant and in favor of the nonmovant.' " *Koenig v. Town*

*of Kure Beach*, 178 N.C. App. 500, 503, 631 S.E.2d 884, 887 (2006) (citations omitted). The standard of review is *de novo. Builders Mut. Ins. Co. v. North Main Constr., Ltd.*, 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006).

Viewed in the light most favorable to plaintiff, the evidence tends to show that plaintiff and Mr. Jones married in 1974, moved to South Carolina from North Carolina in 1979, and had eleven children during their marriage. They separated on 29 January 2004 but did not enter a formal separation agreement until 21 January 2005. On 31 January 2005, plaintiff filed for divorce in South Carolina, and on 4 March 2005, she and Mr. Jones divorced. Defendant admitted that she lived in North Carolina until mid-August 2003 and between March and May of 2004. At the time plaintiff filed her complaint, defendant lived in South Carolina. Plaintiff has resided in South Carolina since 1979. Mr. Jones has lived in South Carolina since 1979 as well, with the exception of spending the majority of the 2003 summer living in a friend's trailer in North Carolina.

Beginning in January 2003, defendant and Mr. Jones began conversing with some regularity via cell phone. Both testified that their relationship began to deepen in the spring of 2003. Defendant testified that she and Mr. Jones began to talk frequently via cell phone in the spring of 2003 and that they would also occasionally meet in parking lots. Defendant and Mr. Jones both admitted that they concealed their phone conversations, these meetings, and their relationship from their respective spouses. Mr. Jones testified that he hid this information from his wife because his relationship with defendant "was too close." Defendant admitted to having secret, lengthy, phone conversations with Mr. Jones and that she remembered being "very close to" Mr. Jones before May 2003. She further testified that in February or March 2003, during a rendevous in a South Carolina parking lot, Mr. Jones gave her a letter stating that "he had fallen in love with [her]."

On or about 12 May 2003, plaintiff was diagnosed with genital herpes. After her diagnosis, Mr. Jones left the marital household for the majority of the 2003 summer, and the Joneses began marriage counseling. Mr. Jones testified that he had never been diagnosed with genital herpes. He did testify that he had a "rash" on his penis and that he believed he had told defendant about this fact; however, Mr. Jones could not explain why he would have told defendant about the rash given that he denied having any sexual contact with her prior to this time. On 15 May 2003, defendant was prescribed Valtrex, a drug used

to treat the herpes virus; however, she testified that she had never been diagnosed with herpes and that the drug was prescribed to treat fever blisters.

For two to three months during the 2003 summer, Mr. Jones lived in North Carolina in a friend's trailer. In May 2003, defendant left her marital home in North Carolina and moved into a condominium in North Carolina. Mr. Jones testified that during the 2003 summer, he and defendant became "affectionate" but that they only engaged in hugging at her North Carolina condominium. Despite testifying several times that only hugging occurred at her North Carolina apartment, defendant ultimately admitted that she and Mr. Jones engaged in hugging and kissing throughout the 2003 summer. Plaintiff testified that in August 2003, Mr. Jones admitted to her that he had engaged in sexual intercourse with defendant at her North Carolina condominium during the 2003 summer and that he had engaged in "sexual touching" with defendant prior to May 2003. In addition, on 6 June 2003, plaintiff went to a home where Mr. Jones was performing construction and found defendant hiding in a closet, albeit fully clothed. When asked at her deposition why she was hiding in the closet, defendant testified that she did not want to confront plaintiff. Plaintiff claims this home was located in Cherry Grove, North Carolina and defendant asserts it was located in Cherry Grove, South Carolina.

On or about 21 August 2003, plaintiff allowed Mr. Jones to return to the marital residence because he promised her that he had ended his relationship with defendant and because plaintiff wanted to work on their marriage. Toward the end of August, defendant attended a treatment facility in Arizona known as "the Meadows." Defendant admitted that while there, she wrote a letter to Mr. Jones almost every day and sent them to a secret, prearranged post office box in Surfside, South Carolina. She further admitted that in these letters, she and Mr. Jones expressed their love for each other. Mr. Jones testified that defendant sent him the letters at this post office box "so she could—just so she could mail me something. So no one would know about it obviously." He further testified that he and defendant were going to great lengths to hide their relationship "[b]ecause it was an inappropriate emotional relationship" in that it was "too close" for two people who were married to other individuals.

On 7 October 2003, Mr. Jones left the marital residence for a second time because plaintiff believed that he and defendant were continuing to see each other and converse on the telephone. On or

about 2 November 2003, the Joneses resumed living together. Plaintiff testified that Mr. Jones left the marital residence for a third time on 29 January 2004, but that they resumed marriage counseling with the goal of Mr. Jones returning to the marital home by June 2004.

In May 2004, plaintiff discovered Mr. Jones and defendant in bed together in the middle of the night at a residence in South Carolina. Defendant and Mr. Jones both admitted that they engaged in sexual intercourse on that day, but claimed that it was the first time that they had done so. Both defendant and Mr. Jones admitted that approximately one month later, in June 2004, they went on a weekend trip to Wilmington and New Bern, North Carolina where they engaged in sexual intercourse. Defendant admitted to paying for the majority of expenses for this trip. Though Mr. Jones initially testified that he and defendant only had sex on these two occasions, he ultimately admitted that he and defendant began having sex on a regular basis beginning in May 2004 and that he was currently in a committed relationship with defendant.

On 21 January 2005, plaintiff and Mr. Jones signed a formal separation agreement, and on 4 March 2005, they divorced. Mr. Jones testified that his relationship with defendant contributed to the downfall of his marriage.

## II. Analysis

### A. Alienation of Affections

[1] On appeal, both parties largely reiterate the arguments raised below. Plaintiff contends a material issue of fact exists as to the state in which the alleged alienation of affections occurred, North Carolina, which recognizes the tort, or South Carolina, which has abolished the tort, particularly given this Court's decision in *Darnell v. Rupplin*, 91 N.C. App. 349, 371 S.E.2d 743 (1988).

Defendant asserts that no material question of fact exists as to the state in which the alleged alienation occurred because virtually all of the activity which purportedly alienated Mr. Jones's affections occurred in South Carolina and the "minimal acts that took place in North Carolina could not have and did not cause any alienation of affection between the Plaintiff and [Mr.] Jones." Specifically, plaintiff argues: (1) the 2003 cell phone calls she made to Mr. Jones while she resided in North Carolina were not "wrongful and malicious conduct"; (2) any alleged alienating acts that occurred in North Carolina prior to Mr. Jones moving back into the marital household in August

and November 2003 could not have alienated Mr. Jones's affections because the fact that Mr. Jones returned to the marital residence shows he and plaintiff reconciled; (3) the June 2004 trip to North Carolina could not have alienated Mr. Jones's affections because "Plaintiff was already divorced [from Mr. Jones] when she learned of said trip" and because defendant and Mr. Jones embarked on said trip after plaintiff had told defendant " 'I don't want him; you can have him' " subsequent to finding Mr. Jones and defendant in bed together in May 2004; and (4) if any alienation did occur, it occurred in South Carolina either during a November 2004 conversation between defendant and plaintiff or during a January 2005 incident in which plaintiff discovered Mr. Jones spending the night at defendant's residence in South Carolina because plaintiff testified that after these incidents she realized she was probably going to have to file for divorce.

Viewing the evidence in its proper light, we agree with plaintiff that the evidence here is sufficient to survive defendant's motion for summary judgment.

"A claim for alienation of affections is a transitory tort because it is based on transactions that can take place anywhere and that harm the marital relationship." *Darnell*, 91 N.C. App. at 351, 371 S.E.2d at 745 (citations omitted). "The substantive law applicable to a transitory tort is the law of the state where the tortious injury occurred, and not the substantive law of the forum state." *Id.* (citations omitted). The issue of where the tortious injury occurs, and accordingly which state's law applies, is based on where the alleged alienating conduct occurred, not the locus of the plaintiff's residence or marriage. *Id.*; *see also* Charles E. Daye & Mark W. Morris, *North Carolina Law of Torts* § 11.25, at 109, n.47 (2d ed. 1999) [hereinafter, Daye, *Torts*] (stating that the "law applicable to determine whether alienation of affections occurred is that of the state in which the conduct occurred"); 1 Robert E. Lee, *North Carolina Family Law § 5.50*, at 421 (5th ed. 1993) [hereinafter Lee, *Family Law*] (stating that "the Court of Appeals [has] found [in *Darnell*] that the place where the conduct occurred should govern [which state's law applies] in an action for alienation of affections") (footnote omitted). Accordingly, where the "defendant's involvement with [the] plaintiff's [spouse]" spans multiple states, for "North Carolina substantive law . . . [to] appl[y]," a plaintiff must show that "the tortious injury . . . occurred in North Carolina." *Darnell*, 91 N.C. App. at 351, 371 S.E.2d at 745. Thus, if the tortious injury occurs in a state that does not recognize

alienation of affections, the case "cannot be tried in a North Carolina court." *Id.* (citations omitted).

> To establish a claim for alienation of affections, plaintiff's evidence must prove: "(1) plaintiff and [her husband] were happily married and a genuine love and affection existed between them; (2) the love and affection was alienated and destroyed; and (3) the wrongful and malicious acts of defendant produced the alienation of affections."

*Id.* at 350-51, 371 S.E.2d at 745 (citations omitted; alteration in original).

> A claim for "alienation of affections is comprised of wrongful acts which deprive a married person of the affections of his or her spouse—love, society, companionship and comfort of the other spouse. . . . The gist of the tort is an interference with one spouse's mental attitude toward the other, and the conjugal kindness of the marital relation. . . . [Evidence of alienation] is sufficient if there is no more than a partial loss of [a spouse's] affections."

*Id.* at 350, 371 S.E.2d at 744 (citations omitted; alterations in original). "[A]n alienation of affections claim" does not have "to be based on pre-separation conduct alone." *McCutchen v. McCutchen*, 360 N.C. 280, 285, 624 S.E.2d 620, 625 (2006). Furthermore:

> Destruction of the marriage . . . is not a necessary element of the action. Rather, the action lies for the diminution of affection within the marital relationship. Thus, while damages will obviously be affected, the action lies for the diminished affection, and a partial loss of affection is sufficient to support the action.

Daye, *Torts* § 11.22.2, at 107 (footnotes omitted). Finally, as this Court stated in *Darnell*, even if it is difficult to discern where the tortious injury occurred, the issue is generally one for the jury:

> We recognize that the injury attributable to the alienation of another's affections is a nebulous concept, which, unlike a broken bone, is not a readily identifiable event. The establishment of this tortious injury is further complicated because it may be sustained through one act or through successive acts of a defendant.
>
> However, even with this knowledge, as long as this cause of action exists in North Carolina, we conclude that the issue of

where the tort took place may not be kept from a jury simply because it is difficult to discern.

*Darnell*, 91 N.C. App. at 354, 371 S.E.2d at 747.

Here, when the evidence is viewed in the light most favorable to plaintiff, we believe a material question of fact exists as to whether the alleged alienation of Mr. Jones's affections occurred in North Carolina or South Carolina, especially given the clandestine phone calls defendant made to Mr. Jones in the spring and summer of 2003, the sexual acts that admittedly and allegedly occurred during the 2003 summer at defendant's North Carolina condominium, and the 2004 trip to North Carolina during which defendant and Mr. Jones admitted to engaging in sexual intercourse.

While defendant cites this Court's decision in *Coachman v. Gould*, 122 N.C. App. 443, 470 S.E.2d 560 (1996), for the proposition that summary judgment is proper here and that the telephone calls she made from North Carolina to South Carolina, were not "wrongful and malicious conduct," we disagree. "A malicious act, in the context of an alienation of affection claim, has been loosely defined to include any intentional conduct that 'would probably affect the marital relationship.' " *Pharr v. Beck*, 147 N.C. App. 268, 272, 554 S.E.2d 851, 854 (2001) (citations and footnote omitted), *overruled in part on other grounds by, McCutchen*, 360 N.C. at 285, 624 S.E.2d at 624-25. "[M]alicious acts . . . are acts constituting ' "unjustifiable conduct causing the injury complained of." ' " *Coachman*, 122 N.C. App. at 448, 470 S.E.2d at 564 (citations omitted). In granting summary judgment in the defendant's favor on the alienation of affections claim in *Coachman*, this Court specifically noted that "the only possible wrongful and malicious instances of conduct by [the defendant we]re the phone calls [the defendant] made to the marital home[.]" *Id.* The Court concluded that the lengthy phone conversations between the defendant, who resided in Florida, and the plaintiff's spouse, who resided in North Carolina, were not "sufficient evidence of malicious and wrongful conduct" because the plaintiff admitted that the defendant and his wife had an ongoing business relationship, which provided "a valid; inoffensive reason for calling the [marital] home" and because "[t]here [wa]s no indication that the phone conversations were marked by salacious whisperings, plans for clandestine meetings, or any other intonation of improper conduct by defendant." *Id.* In contrast, in the instant case, not only is there more evidence to support plaintiff's alienation of affections claim than existed in

*Coachman,* defendant and Mr. Jones intentionally concealed: These phone conversations; their in-person meetings with each other, which they arranged via these phone conversations; and their relationship from their respective spouses.

. Next, defendant argues that these phone calls, the clandestine in-person meetings, and the sexual activity that occurred at her North Carolina condominium during the summer of 2003 did not alienate the affections of Mr. Jones because subsequent to these events, Mr. Jones returned to the marital home and agreed to work on his marriage. We disagree.

First, we note that defendant's argument appears to assume that simply because a plaintiff and her spouse agree to resume living together in the marital home and work on their marriage following a defendant's alleged interference in their marriage, no alienation of affections has occurred. Defendant's argument is contrary to North Carolina law and ignores the fact that "diminution or destruction [of love and affection] often does not happen all at once. ' "[Rather] [t]he mischief is a continuing one[.]" ' " *McCutchen,* 360 N.C. at 284, 624 S.E.2d at 623-24 (citations omitted). Furthermore, the mere fact that plaintiff and Mr. Jones attempted to reconcile, does not conclusively negate the fact that " 'a partial loss of [Mr. Jones's] affections' " could have occurred. *Darnell,* 91 N.C. App. at 350, 371 S.E.2d at 744 (citation omitted). As stated by our Supreme Court, "the fact that spouses continue living together after the alleged alienation does not preclude the possibility that alienation of affections has already occurred." *McCutchen,* 360 N.C. at 284, 624 S.E.2d at 624 (citation omitted). *See also,* 1 Lloyd T. Kelso, *North Carolina Family Law Practice* § 5:9, at 277 (2008) ("[t]he fact that the [wife] continues to live with the [husband] after knowledge of [his] adultery, but without condoning it, is no defense, and the fact that the plaintiff and her or his spouse continue to live in the same house after the spouse's affections have allegedly been alienated affects only the credibility of the plaintiff's testimony, and is not a defense to a claim of alienation of affections") (footnotes omitted). As such, the alleged alienating acts that occurred in North Carolina prior to Mr. Jones's brief returns to the marital residence in August and November 2003 respectively are relevant and material in determining where the tortious injury occurred.

Next, defendant argues that her June 2004 trip to North Carolina with Mr. Jones, during which they engaged in sexual intercourse, "could not possibly have alienated the affection of [Mr.] Jones from

Plaintiff because plaintiff was already divorced [from him] when she learned of said trip[,]" and because when she called plaintiff to apologize for hurting her after plaintiff had found defendant and Mr. Jones in bed together in May 2004, plaintiff told her " 'I don't want him; you can have him.' " We disagree.

First, defendant does not cite any authority to establish that a plaintiff-spouse must show that she was aware of every alienating act prior to divorce in order to assert said acts alienated her spouse's affection. And, we fail to discern how a plaintiff's lack of awareness as to a particular alienating act prior to divorce conclusively negates the fact that said act might have sufficiently diminished her spouse's affections toward her. In addition, defendant makes no argument and cites no authority as to how plaintiff's statement that she did not want Mr. Jones and that defendant could have him, which plaintiff testified was made in a state of anger, conclusively negates the fact that the 2004 trip to North Carolina alienated Mr. Jones's affections. To the extent that defendant's brief implicates the argument that plaintiff consented to such activity, we decline to address this issue as defendant neither raised nor argued the defense of consent below nor does she argue it or cite any authority in support thereof in her brief.

Finally, defendant appears to argue that if any alienation occurred here, it conclusively did not occur until November 2004 when plaintiff purportedly realized via a discussion with defendant in South Carolina that she was going to have to get a divorce, or until January 2005, when plaintiff discovered defendant and Mr. Jones together at defendant's South Carolina residence, which purportedly prompted plaintiff to file for divorce. We disagree. As we stated *supra,* "[d]estruction of the marriage . . . is not a necessary element of [alienation of affections]. Rather, the action lies for the diminution of affection within the marital relationship." Daye, *Torts* § 11.22.2, at 107 (footnote omitted). Hence, while this evidence supports the fact that prior to this point, plaintiff was still trying to salvage her marriage with Mr. Jones and that she believed it was still possible, this does not conclusively negate the fact that defendant might have already sufficiently alienated Mr. Jones's affections toward plaintiff. Furthermore, we note that when viewed in the light most favorable to plaintiff, the November 2004 conversation actually lends support to plaintiff's claim that the alienation had already occurred and that defendant was puzzled as to how plaintiff had not already grasped that fact. Specifically, defendant allegedly stated to plaintiff:

"Don't you get it? What does it take for you to get it? I wonder just what does it take for you to get it. You catch us here and there and, you know, at The Collins and all these telephone conversations. What does it take for you? I just don't understand[.]"

In sum, because we conclude that when the evidence here is viewed in the light most favorable to plaintiff, a material issue of fact exists as to whether the alleged alienation of affections occurred in North Carolina or South Carolina, we hold the trial court erred in granting summary judgment based on lack of subject matter jurisdiction.

## B. Criminal Conversation

[2] Plaintiff asserts the court erred with respect to her criminal conversation claim because North Carolina law is clear that she, not defendant, was entitled to summary judgment. Although defendant "acknowledges case law to the contrary[,]" she argues that a single occurrence of sexual intercourse between her and Mr. Jones in North Carolina in June 2004, which occurred while plaintiff and her husband were separated and subsequent to plaintiff telling her that she did not want Mr. Jones, "does not constitute an interest of the State to give North Carolina subject matter jurisdiction." We agree with plaintiff.

"To withstand [a] defendant's motion for summary judgment on [a] claim of criminal conversation, plaintiff must present evidence demonstrating: '(1) marriage between the spouses and (2) sexual intercourse between defendant and plaintiff's spouse during the marriage.' " *Coachman*, 122 N.C. App. at 446, 470 S.E.2d at 563 (citation omitted). In addition, a plaintiff must also show "that the tortious injuries . . . [the] criminal conversation, occurred in North Carolina before North Carolina substantive law can be applied." *Cooper v. Shealy*, 140 N.C. App. 729, 736, 537 S.E.2d 854, 859 (2000) (citation omitted). Consequently, a plaintiff must show that a defendant engaged in sexual intercourse with her spouse in North Carolina. North Carolina law is clear that a claim for criminal conversation can be based solely on post-separation conduct. *Johnson v. Pearce*, 148 N.C. App. 199, 201, 557 S.E.2d 189, 190-91 (2001). Even where spouses enter into a separation agreement containing provisions which purportedly address and waive their " 'right to exclusive sexual intercourse' with the other," this Court, reasoning that such "provision[s] relate[] only to the spouse['s] rights against each other" and not against third parties, has held that "the existence of [such a] separa-

tion agreement between [a] plaintiff and [her spouse] does not shield [a] defendant from liability for criminal conversation based on [a defendant's] post-separation sexual relationship with [the plaintiff's spouse]." *Nunn v. Allen*, 154 N.C. App. 523, 536, 574 S.E.2d 35, 43-44 (2002), *disc. review denied*, 356 N.C. 675, 577 S.E.2d 630 (2003). Finally, a plaintiff may recover for criminal conversation where the evidence merely shows a single encounter of sexual intercourse between a defendant and her spouse. *See, e.g.*, *Warner v. Torrence*, 2 N.C. App. 384, 163 S.E.2d 90 (1968).

Here, there is no material question of fact that defendant engaged in sexual intercourse with Mr. Jones in North Carolina while he and plaintiff were still married and prior to the execution of a separation agreement. While defendant argues that North Carolina does not have subject matter jurisdiction because at the time the June 2004 intercourse occurred, neither the parties nor Mr. Jones were residents of North Carolina and because North Carolina "has no interest in the exclusive right of the sexual relationship" between South Carolina residents, we note that "[i]n actions arising in tort, [North Carolina employs] the doctrine of *lex loci delicti* [which] provides that the law of the state where the tort was allegedly committed controls the substantive issues of the case." *Gbye v. Gbye*, 130 N.C. App. 585, 585, 503 S.E.2d 434, 434 (citation omitted), *disc. review denied*, 349 N.C. 357, 517 S.E.2d 893 (1998). "North Carolina case law reveals a steadfast adherence by our courts to the traditional application of the *lex loci delicti* doctrine." *Id.* at 587, 503 S.E.2d at 435 (citations omitted). Furthermore, as noted by this Court, our Supreme Court has stated that "*lex loci delicti* is a rule not to be abandoned in this State[.]" *Id.* at 588, 503 S.E.2d at 436 (citing *Boudreau v. Baughman*, 322 N.C. 331, 336, 368 S.E.2d 849, 854 (1988)). Accordingly, we hold that the trial court erred in granting summary judgment based on lack of subject matter jurisdiction in defendant's favor and that the trial court should have entered summary judgment in plaintiff's favor as there is no issue of material fact regarding plaintiff's criminal conversation claim arising out of the June 2004 sexual intercourse and plaintiff was entitled to judgment as a matter of law.

We note that while the vast majority of states have abolished the torts of alienation of affections and criminal conversation, our Supreme Court has clearly stated that both torts exist in North Carolina and that only our legislature or our Supreme Court can abolish them. *Cannon v. Miller*, 313 N.C. 324, 327 S.E.2d 888 (1985). Furthermore, until the legislature or Supreme Court acts to modify

these torts, we are bound both by the decisions of that Court as well as by prior decisions of this Court. *Johnson*, 148 N.C. App. at 202, 557 S.E.2d at 191 (citations omitted).

## III. Conclusion

In sum, we conclude that the trial court erred in granting summary judgment in defendant's favor and dismissing plaintiff's claim for alienation of affections based on lack of subject matter jurisdiction because when the evidence is viewed in the light most favorable to plaintiff, a material question of fact exists as to the state in which defendant's alleged alienation of Mr. Jones's affections occurred. We further conclude that the trial court erred in granting summary judgment in defendant's favor and dismissing plaintiff's criminal conversation claim because it is undisputed that defendant engaged in sexual intercourse with Mr. Jones in North Carolina in June 2004, while he was still married to plaintiff; as such, plaintiff, not defendant, was entitled to summary judgment on the criminal conversation claim. Accordingly, we reverse the trial court's order and remand for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Judges ELMORE and GEER concur.