INMAN, Judge.
 

 We hold that the evidence presented below, while circumstantial, was sufficient to support the trial court's findings and conclusions supporting a judgment for alienation of affection and criminal
 conversation. We further hold that although these torts impose liability only for conduct occurring before a married couple has separated, evidence of post-separation conduct is competent to support findings of pre-separation conduct.
 

 Liliana Silverio Lemus ("Defendant") appeals from a final judgment awarding Brenda Lemus Rodriguez ("Plaintiff") $65,000 for criminal conversation and alienation of affection claims against Defendant. Defendant argues that the trial court erred in finding that Defendant engaged in sexual conduct with Andres Jimenez ("Jimenez")-Plaintiff's husband-during Plaintiff and Jimenez's marriage and before Plaintiff and Jimenez separated. After careful review, we affirm.
 

 Factual and Procedural Background
 

 Plaintiff filed a complaint on 30 March 2015 asserting claims against Defendant pursuant to
 
 N.C. Gen. Stat. § 52-13
 
 for criminal conversation and alienation of affection.
 

 The evidence at trial tended to show the following:
 

 Plaintiff and Jimenez were married 27 December 2007. Defendant, a family friend, attended the couple's wedding and often spent time with them. In December 2011, Plaintiff began to notice her marital relationship change. Due to her suspicions, Plaintiff checked Jimenez's phone records and discovered that he and Defendant were in regular contact through phone calls and text messages, including 120 contacts in a one-month period in early 2012. Plaintiff confronted Jimenez and Defendant about their increased communications, but both denied any wrongdoing.
 

 In addition to checking Jimenez's phone records, Plaintiff also found a credit card bill for Jimenez reflecting charges for stays at two different hotels on 30 and 31 January 2012, weekdays when Jimenez was supposed to be at work. Plaintiff also learned on 21 March 2012 that Jimenez was staying at one of the two hotels. She called the hotel, was told that her husband had been there with an unidentified woman, and obtained a copy of the bill from the hotel for that stay.
 

 On 8 April 2012, Jimenez told Plaintiff their relationship was over and moved out of the marital home. On 26 April 2012, Plaintiff gave birth to her and Jimenez's first child. Plaintiff and Jimenez discussed reconciliation in January 2013, but Jimenez refused to return to the relationship. Jimenez eventually began living with Defendant, who gave birth
 to a child in October 2013. Plaintiff and Jimenez finalized their divorce in September 2014.
 Following a bench trial on 11 July 2016, the trial court entered judgment in favor of Plaintiff. The court concluded that Defendant had maliciously and wrongfully injured a genuine marital relationship between Plaintiff and her spouse; Defendant committed criminal conversation with Plaintiff's spouse; and Plaintiff was entitled to recover $65,000 from Defendant. Defendant filed timely notice of appeal.
 

 Analysis
 

 Defendant challenges the trial court's finding of fact that Defendant had engaged in sexual conduct with Plaintiff's spouse prior to their date of separation, arguing that there was no competent evidence of pre-separation activity that gave rise to more than mere conjecture of sexual conduct. We disagree.
 

 A. Standard of Review
 

 In reviewing a trial court's findings of fact, "we are strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence ... and whether those factual findings in turn support the judge's ultimate conclusions of law."
 
 Reeder v. Carter
 
 ,
 
 226 N.C. App. 270
 
 , 274,
 
 740 S.E.2d 913
 
 , 917 (2013) (internal citation and quotation marks omitted). Conclusions of law, however, are reviewed
 
 de novo
 
 .
 
 Id.
 
 at 274,
 
 740 S.E.2d at 917
 
 . Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgement for that of the lower tribunal.
 
 Id.
 
 at 274,
 
 740 S.E.2d at 917
 
 .
 

 B. Applicable Law
 

 A claim for criminal conversation requires the plaintiff to present evidence of (1) marriage between the spouses and (2) sexual intercourse between the defendant and the plaintiff's spouse during the marriage.
 
 Coachman v. Gould
 
 ,
 
 122 N.C. App. 443
 
 , 446,
 
 470 S.E.2d 560
 
 , 563 (1996). A claim of alienation of affection requires the plaintiff to present evidence showing that "(1) there was a marriage with love and affection existing between the husband and wife; (2) that love and affection was alienated; and (3) the malicious acts of the defendant produced the loss of that love and affection."
 
 Nunn v. Allen
 
 ,
 
 154 N.C. App. 523
 
 , 533,
 
 574 S.E.2d 35
 
 , 41-42 (2002) (internal citation and quotation marks omitted). A malicious act "has been loosely defined to include any intentional conduct that would probably affect the marital relationship."
 
 Pharr v. Beck
 
 ,
 
 147 N.C. App. 268
 
 , 272,
 
 554 S.E.2d 851
 
 , 854 (2001),
 
 overruled on other grounds
 
 ,
 
 McCutchen v. McCutchen
 
 ,
 
 360 N.C. 280
 
 ,
 
 624 S.E.2d 620
 
 (2006) (internal citation and quotation marks omitted). Malice is
 conclusively presumed by a showing that the defendant engaged in sexual intercourse with the plaintiff's spouse.
 
 Id.
 
 at 272,
 
 554 S.E.2d at 854
 
 .
 

 This Court and the North Carolina Supreme Court have previously held that sexual conduct occurring after a married couple has separated, but before their divorce, is sufficient to support claims for criminal conversation and alienation of affection.
 
 McCutchen
 
 ,
 
 360 N.C. at 284
 
 ,
 
 624 S.E.2d at 684
 
 ("[F]or an alienation claim to arise, the couple need only be
 
 married
 
 with genuine love and affection at the time of defendant's interference.") (emphasis in original);
 
 Jones v. Skelley
 
 ,
 
 195 N.C. App. 500
 
 , 511,
 
 673 S.E.2d 385
 
 , 393 (2009) ("North Carolina law is clear that a claim for criminal conversation can be based solely on post-separation conduct.").
 

 In
 
 Pharr v. Beck
 
 , this Court held that post-separation conduct is admissible to prove a claim for alienation "only to the extent it corroborates pre-separation activities resulting in the alienation of affection."
 
 147 N.C. App. at 273
 
 ,
 
 554 S.E.2d at 855
 
 . The Court reasoned that allowing a claim based solely on post-separation conduct was incompatible with North Carolina's alimony statute, which limits culpability to post-separation conduct.
 
 Id.
 
 at 273,
 
 554 S.E.2d at
 
 855 (citing
 
 N.C. Gen. Stat. § 50-16
 
 .1A (1999) ). The Supreme Court in
 
 McCutchen
 
 overruled that holding in
 
 Pharr
 
 "because North Carolina's alimony statute does not govern the common law tort of alienation of affections."
 
 360 N.C. at 285
 
 ,
 
 624 S.E.2d at 624
 
 .
 

 Pharr
 

 's
 
 holding was inconsistent with prior and subsequent decisions by this Court. In
 
 Johnson v. Pearce
 
 ,
 
 148 N.C. App. 199
 
 ,
 
 557 S.E.2d 189
 
 (2001), this Court held that evidence
 of sexual intercourse between the defendant and the plaintiff's spouse after the date of separation, but before the date of divorce, was sufficient to support a claim for criminal conversation, explaining: "Until the legislature or Supreme Court acts to modify the tort of criminal conversation, we are bound by decisions of our Supreme Court and prior panels of this Court recognizing that the mere fact of separation does not bar a claim for criminal conversation occurring during the separation."
 

 Id.
 

 at 202
 
 ,
 
 557 S.E.2d at 191
 
 .
 

 More recently, however, the reasoning of the
 
 Pharr
 
 decision regarding liability arising from post-separation conduct has become the law. In 2009, the General Assembly codified alienation of affection and criminal conversation in a statute specifically limiting these torts to arise only from acts committed prior to a married couple's separation: "No act of the defendant shall give rise to a cause of action for alienation of affection or criminal conversation
 
 that occurs after the plaintiff and
 

 the plaintiff's spouse physically separate with the intent of either the plaintiff or plaintiff's spouse that the physical separation remain permanent
 
 ."
 
 N.C. Gen. Stat. § 52-13
 
 (a) (2015) (emphasis added). Stated simply, these torts now impose liability for conduct occurring only: (1) during the marriage and (2) prior to physical separation. Therefore, claims of alienation of affection and criminal conversation arising after the effective date of Section 52-13 cannot be sustained without evidence of pre-separation acts satisfying the elements of these respective torts.
 

 What is less clear is whether evidence of post-separation acts is admissible to support an inference of pre-separation acts constituting alienation of affection or criminal conversation. With respect to the tort of criminal conversation, and with respect to the element of malice in an alienation of affection case being satisfied by criminal conversation, prior decisions in cases addressing evidence necessary to prove adultery are instructive, because criminal conversation is adultery.
 
 See
 

 Scott v. Kiker
 
 ,
 
 59 N.C. App. 458
 
 , 461,
 
 297 S.E.2d 142
 
 , 145 (1982).
 

 In re Estate of Trogdon
 
 ,
 
 330 N.C. 143
 
 ,
 
 409 S.E.2d 897
 
 (1991), which held that a surviving spouse was barred by adultery from receiving a year's allowance from a decedent's estate, is routinely cited in criminal conversation cases considering what evidence is sufficient to prove that sexual intercourse occurred. Our Supreme Court observed in
 
 Trogdon
 
 a principle that transcends generations: "Adultery is nearly always proved by circumstantial evidence ... as misconduct of this sort is usually clandestine and secret."
 
 Id.
 
 at 148,
 
 409 S.E.2d at 900
 
 (internal citation and quotation marks omitted). When there is no direct evidence of sexual intercourse between the defendant and the plaintiff's spouse, the plaintiff can prove criminal conversation by circumstantial evidence. However, circumstantial evidence of sexual intercourse must rise to more than "mere conjecture," and is generally sufficient "if a plaintiff can show opportunity and inclination, [because] it follows that such evidence will tend to support a conclusion that more than 'mere conjecture' exists to prove sexual intercourse by the parties."
 
 Coachman
 
 ,
 
 122 N.C. App. at 447
 
 ,
 
 470 S.E.2d at 563
 
 . In
 
 Trogdon
 
 , the Court held that adultery was proven by circumstantial evidence including the spouse moving out of the marital home and living with the third party and the spouse's refusal to testify about the nature of her relationship with the third party.
 
 330 N.C. at 151
 
 ,
 
 409 S.E.2d at 903
 
 .
 

 This Court has held that intentional acts by a defendant other than sexual intercourse satisfied the malice element of alienation of affection. In
 
 Pharr
 
 , this Court held that malice was shown by evidence including the following pre-separation conduct by the defendant: meeting
 regularly with the plaintiff's spouse knowing that he was married; holding the spouse's hand when he was in the hospital; giving him presents; giving him "flirtatious looks;" hosting the spouse in her bedroom where mixed drinks were found; and giving the spouse a calling card and allowing him to use her post office box.
 
 147 N.C. App. at 273-74
 
 ,
 
 554 S.E.2d at 855
 
 . The Court also held that evidence of post-separation sexual intercourse between the defendant and the plaintiff's spouse "corroborates the pre-separation
 relationship between these parties."
 
 Id.
 
 at 274,
 
 554 S.E.2d at 855
 
 .
 

 Based on our precedent, we hold that evidence of post-separation conduct may be used to corroborate evidence of pre-separation conduct and can support claims for alienation of affection and criminal conversation, so long as the evidence of pre-separation conduct is sufficient to give rise to more than mere conjecture.
 

 C. Application of the Law to This Case
 

 Defendant contends that one of the trial court's factual findings was not supported by competent evidence, that the trial court's conclusions that Defendant was liable for alienation of affection and criminal conversation were not supported by the trial court's findings, and that Plaintiff presented insufficient evidence to support her claims.
 

 "Where trial is by judge and not by jury, the trial court's findings of fact have the force and effect of a verdict by a jury and are conclusive on appeal if there is evidence to support them,
 
 even though the evidence might sustain findings to the contrary
 
 ."
 
 Trogdon,
 

 330 N.C. at 147
 
 ,
 
 409 S.E.2d at 900
 
 (emphasis in original).
 

 Plaintiff's evidence of pre-separation conduct included: (1) phone records showing 120 contacts between Defendant and Plaintiff's spouse in a one-month period, all at times when Jimenez was away from home; (2) two hotel charges on Jimenez's credit card bill; (3) a third hotel receipt dated 21 March 2012 and information from the third hotel that Jimenez was there with a woman; and (4) social media postings by Defendant and Jimenez which Plaintiff interpreted as their initials used as a code between them. Plaintiff's evidence of post-separation conduct included: (1) Jimenez and Defendant began living together in December 2012 or January 2013; (2) Defendant gave birth to a child with the name Andres-Jimenez's first name-in October 2013; (3) Jimenez told Plaintiff in 2013 that he loved Defendant; (4) Jimenez told Plaintiff that they could not reconcile because Defendant was pregnant; and (5) Defendant admitted in her trial testimony that she had sexual intercourse with Jimenez after
 he had separated from Plaintiff. Defendant does not appeal from the trial court's findings of fact concerning any of these circumstances, and such findings are binding on appeal.
 

 Defendant contends that the evidence was insufficient to support the trial court's finding that Jimenez and Defendant "had sexual relations during the time [Jimenez and Plaintiff] were married" and that Jimenez and Plaintiff "did not have any legal separation at the time."
 

 In considering the sufficiency of Plaintiff's evidence to support this finding, we are mindful of the factually specific nature of claims for alienation of affection, criminal conversation, and adultery and our Supreme Court's observance that these cases often rest solely on circumstantial evidence.
 
 Trogdon
 
 ,
 
 330 N.C. at 148
 
 ,
 
 409 S.E.2d at 900
 
 . We hold that evidence of post-separation conduct between Defendant and Jimenez corroborates evidence of their pre-separation conduct, including allowing a reasonable inference that Defendant was the unidentified woman who accompanied Jimenez at a hotel on one occasion in March 2012 and that she engaged in sexual intercourse with him on that occasion, a few weeks before Plaintiff and Jimenez separated. Although Defendant at times in her trial testimony denied living with Jimenez and claimed not to know who the father of her child was, the trial court found otherwise based on evidence including Plaintiff's testimony and inconsistencies in Defendant's testimony. Accordingly, we affirm the trial court's finding that Defendant and Jimenez had sexual relations during a time when Plaintiff and Jimenez were married and not separated.
 

 Had the trial court found simply that Jimenez and Defendant had sexual relations while Plaintiff was married to Jimenez, its finding would on its face be insufficient to support Plaintiff's claims without specifying that such conduct occurred prior to the couple's separation. But the trial court also found that Defendant and Jimenez had sexual relations prior to a "legal separation" of Plaintiff and Jimenez. This finding, in the context of all evidence of record, is sufficiently specific to support the trial court's conclusions that Defendant
 is liable to Plaintiff for alienation of affection and criminal conversation.
 

 Defendant contends that the trial court's use of the term "legal separation" rendered its finding insufficient to support the trial court's conclusion that Defendant was liable for alienation of affection and criminal conversation because a legal separation could mean an event later than the married couple's physical separation, and thus beyond the scope of liability allowed by statute. On the facts before us, we disagree. Subpart (a) of Section 52-13 defines separation in legal terms by referring
 to an occurrence in which "the plaintiff and the plaintiff's spouse physically separate with the intent of either the plaintiff or plaintiff's spouse that the physical separation remain permanent."
 
 N.C. Gen. Stat. § 52-13
 
 (a) (2015). Although we acknowledge, as Defendant argues, that in other contexts legal separation may refer to spouses' execution of a separation agreement or entry of a court order for pendent lite relief pending divorce, in this case neither party presented evidence of any occurrence manifesting Jimenez's separation from Plaintiff other than his moving out of the marital home on 8 April 2012. So there is no basis to interpret the trial court's finding to refer to any other date or occurrence as the couple's "legal separation." On this record, we hold that the trial court's factual findings and conclusions of law impose liability on Defendant for conduct that occurred within the limited time period allowed by the statute.
 

 Conclusion
 

 For the reasons set forth above, we hold that the trial court's findings were supported by the evidence, and that the trial court's conclusions were sufficiently supported by the findings.
 

 AFFIRMED.
 

 Chief Judge MCGEE and Judge TYSON concur.