ZACHARY, Judge.
 

 *590
 
 Stewart Polsky, M.D., Carolina Urology Partners, PLLC, and Lake Norman Urology, PLLC (defendants) appeal an order denying certain portions of their pretrial motion
 
 in limine
 
 . For the reasons that follow, we dismiss defendants' appeal as interlocutory.
 

 I. Background
 

 Plaintiff Walter Smith (Smith) became a paraplegic in 1975 when he suffered a spinal cord injury in a motor vehicle accident. In 1995, Smith underwent the implantation of an inflatable penile prosthesis, which malfunctioned and ceased operating in 2008. Dr. Polsky became Smith's urologist in 2005. On 25 August 2009, Dr. Polsky performed penile prosthesis revision surgery on Smith, a procedure that involved removing the original inflatable penile prosthetic device and replacing it with a new one.
 

 Following the procedure, Smith experienced pain and swelling at the surgical site, and he was eventually hospitalized on 19 September 2009. Dr. Polsky examined Smith at the hospital, diagnosed him with a "possible scrotal infection," and prescribed three antibiotics. The antibiotics Gentamicin, Vancomycin, and Ceftriaxone were administered intravenously. After being discharged from the hospital on 23 September 2009, Smith was instructed to continue taking the three antibiotics intravenously, and Advanced Home Care, Inc. (Advanced Home Care) provided and administered the medications. Smith received his last dose of Gentamicin-which is known to cause bilateral vestibulopathy, a condition caused by damage to one's inner ears that results in imbalance and impaired vision-on 9 October 2009. Shortly thereafter, Smith was diagnosed with bilateral vestibulopathy. Smith had the infected, replacement penile prosthesis surgically removed approximately three years later.
 

 In February 2011, Smith filed for Chapter 7 Bankruptcy. On 21 August 2012, the trustee of Smith's bankruptcy estate filed a complaint in Iredell County Superior Court against Dr. Polsky, his medical practice, and Advanced Home Care. The complaint alleged numerous theories of medical negligence arising out of the surgical care as well as the prescription and monitoring of the post-surgery antibiotic therapy that Smith received from August through October of 2009. Pertinent to this appeal, the complaint alleged that once Smith was diagnosed with
 
 *591
 
 a scrotal (or superficial wound ) infection on 19 September 2009, Dr. Polsky was negligent in choosing to prescribe antibiotic therapy instead of surgically removing the infected penile prosthesis. All claims against Advanced Home Care were eventually settled and dismissed, and a portion of the settlement proceeds were used to satisfy the claims of Smith's bankruptcy estate. As a result, Smith was substituted as plaintiff against Dr. Polsky and his practice, the remaining defendants in the medical negligence action.
 

 In May 2014, defendants filed a Motion for Summary Judgment, or in the alternative, Motion for Partial Summary Judgment. However, before the trial court ruled on defendants' motion, the parties entered into a Voluntary Dismissal with Prejudice and Stipulation (the Dismissal). Pursuant to the Dismissal, Smith dismissed with prejudice the claims contained in Paragraph 41, subparagraphs (d) through (k) of his complaint, which alleged the following theories of negligence:
 

 (d) Having decided to initiate antibiotic therapy on September 19, 2009, Defendant
 
 *357
 
 Dr. Polsky breached the standard of care by choosing the antibiotic gentamicin as opposed to choosing other more efficacious and less risky agents.
 

 (e) Having decided to administer gentamicin, Dr. Polsky failed to communicate to the hospital pharmacists the severity of the infection, and whether he was employing gentamicin as a primary or synergistic agent.
 

 (f) Having decided to administer gentamicin, Dr. Polsky failed to adequately inform himself of what parameters would be applied by the hospital pharmacists in calculating "gentamicin daily dosing per pharmacy."
 

 (g) Having decided to administer gentamicin, Dr. Polsky failed to select a proper dose of gentamicin for the target infection assuming that it required treatment for more than 3-5 days.
 

 (h) Having decided to administer gentamicin, Dr. Polsky failed to prudently balance the probability of success with antibiotic treatment against the extremely high likelihood that bilateral vestibulopathy would result from the prolonged administration of 7 mg/kg/day of gentamicin.
 

 (i) Having decided to administer gentamicin, Dr. Polsky failed to order renal function testing with sufficient
 
 *592
 
 frequency to detect rapidly deteriorating renal function. This violation continued throughout the period of gentamicin administration as changes in renal function were noted. Defendant Dr. Polsky breached the standard of care when he failed to discontinue gentamicin immediately on October 1, 2009, when excessive gentamicin and vancomycin trough levels were obtained in conjunction with an increased serum creatinine.
 

 (j) Defendant Dr. Polsky breached the standard of care when he failed to discontinue gentamicin immediately on October 6, 2009, when excessive gentamicin and vancomycin trough levels were obtained in conjunction with an increased serum creatinine.
 

 (k) His care was also deficient in other respects as may be discovered in the prosecution of this action.
 

 The Dismissal also required Smith to file an amended complaint, and he did so on 3 September 2014. Smith further stipulated that the "only remaining theories of negligence alleged against [d]efendants ... [were] enumerated in Paragraph 32, subparagraphs (a) through (c)" of his amended complaint, which read:
 

 (a) Defendant Dr. Polsky breached the standard of care by failing to utilize a multiple wound irrigation technique at the time of the AMS 700 reimplantation on August 25, 2009.
 

 (b) On or about September 19, 2009, Defendant Dr. Polsky breached the standard of care by failing to remove the previously placed reservoir and attached tubing, along with the AMS 700 device which was implanted on August 25, 2009.
 

 (c) Defendant Dr. Polsky breached the standard of care by initiating antibiotic treatment for the infected prosthetic device on September 19, 2009. The risk of Dr. Polsky's prescribed long term therapy greatly outweighed the extremely unlikely potential reward of salvaging the device.
 

 In exchange for Smith's promises to dismiss the above-mentioned theories of negligence and file an amended complaint, defendants agreed and stipulated that material issues of fact remained concerning Smith's surviving negligence claims.
 

 *593
 
 Smith and defendants both filed pretrial motions between November and December of 2015. Defendants' motion
 
 in limine
 
 No. 1 requested that the trial court exclude
 

 [a]ny evidence and/or argument related to any theories of liability that Dr. Polsky was negligent in any manner for the selection and/or use of the antibiotic Gentamicin, including but not limited to: (1) the decision not to choose any alternative antibiotic; (2) testimony or evidence relating to the individual toxicity characteristics of Gentamicin ; (3) that the "prolonged" use of Gentamicin was negligent; and (4) evidence related to the "synergistic" effect of the antibiotics as those claims have been Dismissed, with Prejudice, by the Plaintiff.
 

 The trial court held a hearing on the parties' pretrial motions on 21 December 2015. At the hearing, defendants argued that while Smith
 
 *358
 
 could present evidence that "any antibiotic treatment would not have helped [him] because the only [prudent] decision [was] the surgical removal," he could not contend that Dr. Polsky was negligent in choosing, administering, dosing, or monitoring the antibiotic Gentamicin.
 

 In contrast, Smith argued that not allowing him to explain the risks of the Gentamicin treatment "would be to hamstring ..., prevent us from being able to give the jury the rest of the story." Smith's position was that the term "initiating antibiotic therapy" in Paragraph 32, subparagraph (c) of his amended complaint included and preserved claims that Dr. Polsky was negligent in prescribing the long-term use of Gentamicin.
 

 Defendants responded by asserting that all negligence claims concerning the specific, prolonged use of Gentamicin to treat Smith's infection had been dismissed with prejudice. According to defendants, the Dismissal acted as a prior adjudication on the merits as to those claims, and all subparts of defendants' motion
 
 in limine
 
 should have been granted pursuant to the doctrine of res judicata.
 

 In an order entered 8 March 2016, the trial court denied defendant's motion
 
 in limine
 
 No. 1, subparts (1) through (3), and granted defendants' motion as to subpart (4). Defendants appeal.
 

 II. Standard of Review
 

 It is well established that
 

 [a] motion
 
 in limine
 
 seeks pretrial determination of the admissibility of evidence proposed to be introduced at
 
 *594
 
 trial, and is recognized in both civil and criminal trials. The trial court has wide discretion in making this advance ruling.... Moreover, the court's ruling is not a final ruling on the admissibility of the evidence in question, but only interlocutory or preliminary in nature. Therefore, the court's ruling on a motion
 
 in limine
 
 is subject to modification during the course of the trial.
 

 Heatherly v. Indus. Health Council
 
 ,
 
 130 N.C.App. 616
 
 , 619,
 
 504 S.E.2d 102
 
 , 105 (1998) (internal citations and quotation marks omitted). When this Court reviews a decision to grant or deny a motion
 
 in limine
 
 , the determination will not be reversed absent a showing that the trial court abused its discretion.
 

 Id.
 

 In the instant case, because the trial court's order denying portions of defendants' motion
 
 in limine
 
 No. 1 is interlocutory, we must first determine whether this appeal is properly before us. Both Smith and defendants contend that the trial court's ruling is subject to immediate review, but "acquiescence of the parties does not confer subject matter jurisdiction on a court."
 
 McCutchen v. McCutchen
 
 ,
 
 360 N.C. 280
 
 , 282,
 
 624 S.E.2d 620
 
 , 623 (2006).
 

 "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy."
 
 Veazey v. Durham
 
 ,
 
 231 N.C. 354
 
 , 362,
 
 57 S.E.2d 375
 
 , 381 (1950). In most cases, a party has "no right of immediate appeal from interlocutory orders and judgments."
 
 Goldston v. Am. Motors Corp.
 
 ,
 
 326 N.C. 723
 
 , 725,
 
 392 S.E.2d 735
 
 , 736 (1990). This general rule prevents "fragmentary and premature appeals that unnecessarily delay the administration of justice[.]"
 
 Bailey v. Gooding
 
 ,
 
 301 N.C. 205
 
 , 209,
 
 270 S.E.2d 431
 
 , 434 (1980).
 

 There are "at least two instances[,]" however, in which a party may immediately appeal from an interlocutory order or judgment.
 
 Sharpe v. Worland
 
 ,
 
 351 N.C. 159
 
 , 161,
 
 522 S.E.2d 577
 
 , 579 (1999). The first occasion arises when the trial court certifies its order for immediate review under Rule 54(b) of the North Carolina Rules of Civil Procedure.
 
 McConnell v. McConnell
 
 ,
 
 151 N.C.App. 622
 
 , 624,
 
 566 S.E.2d 801
 
 , 803 (2002). In the second instance, immediate review is available where the order affects a substantial right.
 
 Blackwelder v. Dept. of Human Res.
 
 ,
 
 60 N.C.App. 331
 
 , 333,
 
 299 S.E.2d 777
 
 , 779 (1983).
 

 Our Supreme Court has defined a "substantial right" as "a legal right affecting or involving a matter of substance as distinguished from matters of form: a right materially affecting those interests which a [person]
 

 *595
 
 is entitled to have preserved and protected by law: a material right."
 
 Sharpe
 
 ,
 
 351 N.C. at 162
 
 ,
 
 522 S.E.2d at 579
 
 (quotation marks and citation omitted) (alteration in original). "The
 
 *359
 
 burden is on the appellant to establish that a substantial right will be affected unless he is allowed immediate appeal from an interlocutory order."
 
 Embler v. Embler
 
 ,
 
 143 N.C.App. 162
 
 , 166,
 
 545 S.E.2d 259
 
 , 262 (2001). Put differently, an appellant must demonstrate that the challenged "order deprives the appellant of a substantial right that 'will clearly be lost or irremediably adversely affected if the order is not review[ed] before final judgment.' "
 
 Edmondson v. Macclesfield L-P Gas Co.
 
 ,
 
 182 N.C.App. 381
 
 , 391,
 
 642 S.E.2d 265
 
 , 272 (2007) (quoting
 
 Blackwelder
 
 ,
 
 60 N.C.App. at 335
 
 ,
 
 299 S.E.2d at
 
 780 ). In making this determination, our appellate courts take a "restricted view of the 'substantial right' exception to the general rule prohibiting immediate appeals from interlocutory orders."
 
 Blackwelder
 
 ,
 
 60 N.C.App. at 334
 
 ,
 
 299 S.E.2d at 780
 
 .
 

 III. Analysis
 

 According to defendants, "[a]llowing [Smith] to resurrect his Gentamicin-specific claims that were previously dismissed undermines the doctrine of
 
 res judicata
 
 and violates [d]efendants' substantial right to avoid inconsistent verdicts on the same claims." Defendants further argue that if the trial court's preliminary ruling on their motion
 
 in limine
 
 is not addressed, they will be forced "to re-litigate the previously-adjudicated Gentamicin claims." Defendants' res judicata defense rests on their contention that the Dismissal operated as a final judgment on the merits releasing them from any further exposure to Gentamicin claims at trial. In sum, while acknowledging the interlocutory nature of their appeal, defendants insist that the denial of their motion
 
 in limine
 
 No. 1, subparts (1) through (3), affects a substantial right. We disagree.
 

 The longstanding rule in North Carolina is that a voluntary dismissal with prejudice is, by operation of law, a final judgment on the merits implicating the doctrine of res judicata.
 
 Riviere v. Riviere
 
 ,
 
 134 N.C.App. 302
 
 , 306,
 
 517 S.E.2d 673
 
 , 676 (1999) ;
 
 Kabatnik v. Westminster Co.
 
 ,
 
 63 N.C.App. 708
 
 , 712,
 
 306 S.E.2d 513
 
 , 515 (1983) ;
 
 Barnes v. McGee
 
 ,
 
 21 N.C.App. 287
 
 , 290,
 
 204 S.E.2d 203
 
 , 205 (1974). "Under the doctrine of res judicata or 'claim preclusion,' a final judgment on the merits in one action precludes a second suit based on the same cause of action between the same parties or their privies."
 
 Whitacre P'ship v. Biosignia, Inc.
 
 ,
 
 358 N.C. 1
 
 , 15,
 
 591 S.E.2d 870
 
 , 880 (2004) (citations omitted). By its very operation, the doctrine precludes the relitigation of "all matters ... that were or should have been adjudicated in the prior action."
 

 Id.
 

 (citation omitted).
 

 *596
 
 This Court has previously held that "when a trial court enters an order rejecting the affirmative defense[ ] of res judicata ..., the order
 
 can
 
 affect a substantial right and
 
 may
 
 be immediately appealed."
 
 Strates Shows, Inc. v. Amusements of Am., Inc.
 
 ,
 
 184 N.C.App. 455
 
 , 459,
 
 646 S.E.2d 418
 
 , 422 (2007) (emphasis added; citation and internal quotation marks omitted). Even so, it is clear that invocation of res judicata "does not ... automatically entitle a party to an interlocutory appeal of an order rejecting" that defense.
 
 Foster v. Crandell
 
 ,
 
 181 N.C.App. 152
 
 , 162,
 
 638 S.E.2d 526
 
 , 534,
 
 disc. review denied
 
 ,
 
 361 N.C. 567
 
 ,
 
 650 S.E.2d 602
 
 (2007). For example, the "denial of a motion for summary judgment based upon the defense of
 
 res judicata
 
 may involve a substantial right so as to permit immediate appeal only where a possibility of inconsistent verdicts exists if the case proceeds to trial."
 
 Country Club of Johnston County, Inc. v. U.S. Fidelity and Guar. Co.
 
 ,
 
 135 N.C.App. 159
 
 , 167,
 
 519 S.E.2d 540
 
 , 546 (1999) (citation and quotation marks omitted),
 
 disc. review denied
 
 ,
 
 351 N.C. 352
 
 ,
 
 542 S.E.2d 207
 
 (2000). Thus, motions based upon res judicata serve to "prevent[ ] the possibility that a successful defendant, or one in privity with that defendant, will twice have to defend against the same claim by the same plaintiff, or one in privity with that plaintiff."
 
 Bockweg v. Anderson
 
 ,
 
 333 N.C. 486
 
 , 491,
 
 428 S.E.2d 157
 
 , 161 (1993).
 

 According to defendants, "[p]roceeding with the present case under the trial court's ruling will force [them] to re-litigate the previously-adjudicated Gentamicin claims" and to "confront the likelihood of inconsistent verdicts[.]" In making this argument, defendants equate the Dismissal with a prior decision on the merits in a court of law.
 

 *360
 
 Previous decisions, however, have specifically restricted interlocutory appeals based on the doctrine of res judicata.
 

 Interlocutory appeals [are limited] to the situation when the rejection of ... defenses [based upon res judicata or collateral estoppel] g[i]ve rise to a risk of two actual trials resulting in two different verdicts.
 
 See, e.g.
 
 ,
 
 Country Club of Johnston County, Inc.
 
 ..., 135 N.C.App. ... [at] 167, 519 S.E.2d ... [at] 546 ... (holding that an order denying a motion based on the defense of res judicata gives rise to a "substantial right" only when allowing the case to go forward without an appeal would present the possibility of inconsistent jury verdicts) ...;
 
 Northwestern Fin. Group, Inc. v. County of Gaston
 
 ,
 
 110 N.C.App. 531
 
 , 536,
 
 430 S.E.2d 689
 
 , 692 (holding that the defense of res judicata gives rise to a "substantial right" only when there is a risk of two actual trials resulting in two different verdicts),
 
 *597
 

 disc. review denied
 
 ,
 
 334 N.C. 621
 
 ,
 
 435 S.E.2d 337
 
 (1993). One panel, however, has held that a "substantial right" was affected when defendants raised defenses of res judicata and collateral estoppel based on a prior federal summary judgment decision rendered on the merits.
 
 See
 

 Williams v. City of Jacksonville Police Dep't
 
 ,
 
 165 N.C.App. 587
 
 , 589-90,
 
 599 S.E.2d 422
 
 , 426 (2004).
 

 Foster
 
 ,
 
 181 N.C.App. at 162-63
 
 ,
 
 638 S.E.2d at 534
 
 .
 

 The
 
 Foster
 
 Court dismissed the defendants' appeal and had no need to reconcile
 
 Country Club
 
 ,
 
 Northwestern
 
 , and
 
 Williams
 
 , because in
 
 Foster
 
 , as here, there was no possibility of a result inconsistent with a prior jury verdict or a prior decision on the merits by a judge.
 
 Id.
 
 at 163,
 
 638 S.E.2d at 534
 
 . Indeed, defendants' res judicata defense in the instant case rests solely on the Dismissal with the accompanying stipulations. A review of the pertinent case law reveals that, in the context of interlocutory appeals involving the defense of res judicata, this Court has drawn a distinction between claims of a substantial right based on prior voluntary dismissals with prejudice and claims based on prior adjudications by a judge or jury.
 

 Id.
 

 ;
 
 Robinson v. Gardner
 
 ,
 
 167 N.C.App. 763
 
 , 769,
 
 606 S.E.2d 449
 
 , 453,
 
 disc. review denied
 
 ,
 
 359 N.C. 322
 
 ,
 
 611 S.E.2d 417
 
 (2005) ;
 
 Allen v. Stone
 
 ,
 
 161 N.C.App. 519
 
 , 522,
 
 588 S.E.2d 495
 
 , 497 (2003) ;
 
 see also
 

 Anderson v. Atl. Cas. Ins. Co.
 
 ,
 
 134 N.C.App. 724
 
 , 727,
 
 518 S.E.2d 786
 
 , 789 (1999) (holding that the defendant was not entitled to immediate appeal based on argument that action was barred by a release because "[a]voidance of trial is not a substantial right").
 

 In
 
 Allen
 
 , the plaintiff had dismissed her claims pursuant to Rule 41(a) of the North Carolina Rules of Civil Procedure on two previous occasions.
 
 161 N.C.App. at 519-20
 
 ,
 
 588 S.E.2d at 496
 
 . After the plaintiff filed a third action, the defendant filed a motion to dismiss based on the ground that Rule 41(a)(1) 's two-dismissal rule
 
 [1]
 
 barred the action. The trial court denied the motion to dismiss, and the defendant appealed, arguing that the denial of his motion based on the prior dismissals affected a substantial right.
 

 Id.
 

 at 521
 
 ,
 
 588 S.E.2d at 496
 
 . However, this Court rejected the defendant's argument and explained "that avoidance of a trial, no matter how
 
 tedious or unnecessary
 
 , is not a substantial right entitling an appellant to immediate review."
 

 Id.
 

 at 522
 
 ,
 
 588 S.E.2d at 497
 
 (emphasis added).
 

 *598
 
 The procedural facts in
 
 Robinson
 
 were virtually identical to those in
 
 Allen
 
 . However, the defendants in
 
 Robinson
 
 claimed that their appeal affected a substantial right because the plaintiff's prior dismissal with prejudice gave rise to the defense of res judicata.
 
 167 N.C.App. at 768
 
 ,
 
 606 S.E.2d at 452-53
 
 . After holding that it was bound by
 
 Allen
 
 , the
 
 Robinson
 
 Court explained that the defendants' assertion of a res judicata defense had no talismanic effect on the substantial right inquiry:
 

 The present appeal does not involve possible inconsistent jury verdicts or even an inconsistent decision on the merits since, as in
 
 Allen
 
 , there was only a voluntary dismissal that would-if not set aside-result
 
 *361
 
 in an adjudication on the merits only by operation of law. There has been no decision by any court or jury that could prove to be inconsistent with a future decision. Defendants do not seek to avoid inconsistent decisions; they seek to avoid any litigation at all.
 

 Id
 
 . at 769,
 
 606 S.E.2d at 453
 
 .
 

 In
 
 Foster
 
 , the defendants appealed the denial of their motion for judgment on the pleadings. The defendants' claim of a substantial right was based on their contention that a prior settlement and voluntary dismissal with prejudice afforded them the defenses of collateral estoppel and res judicata.
 
 181 N.C.App. at 162
 
 ,
 
 638 S.E.2d at 533
 
 . This Court disagreed, held that it was bound by the decisions in
 
 Allen
 
 and
 
 Robinson
 
 , and dismissed the defendants' appeal as interlocutory.
 
 Id.
 
 at 163,
 
 638 S.E.2d at 534
 
 . The
 
 Foster
 
 Court reasoned as follows: "Like the defendants in
 
 Robinson
 
 and
 
 Allen
 
 , defendants in this case base their claim of res judicata on a prior voluntary dismissal with prejudice that does not reflect a ruling on the merits by any jury or judge."
 
 Id.
 
 at 163-64,
 
 638 S.E.2d at 534
 
 .
 

 As in
 
 Foster
 
 , defendants in the present case base their claim of a substantial right exclusively on Smith's dismissal with prejudice and the parties' accompanying stipulations. In making this claim, defendants ignore the fact that no judge or jury has ruled on the merits of the claims affected by the Dismissal. Instead, the Dismissal represents "an adjudication on the merits only by operation of law."
 
 Robinson
 
 ,
 
 167 N.C.App. at 769
 
 ,
 
 606 S.E.2d at 453
 
 . This appeal does not involve possible inconsistent jury verdicts, much less an inconsistent
 
 decision
 
 on the merits.
 
 See
 

 Green v. Duke Power Co.
 
 ,
 
 305 N.C. 603
 
 , 608,
 
 290 S.E.2d 593
 
 , 596 (1982) (while the possibility of two trials on the same issue can give rise to a substantial right justifying an interlocutory appeal, the appellant must
 
 *599
 
 show that a judgment or order creates "the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue");
 
 Country Club of Johnston County, Inc.
 
 ,
 
 135 N.C.App. at 167
 
 ,
 
 519 S.E.2d at 546
 
 (dismissing appeal based on res judicata because prior decisions involved summary judgment orders and not verdicts, and, therefore, the case "present[ed] no possibility of inconsistent verdicts").
 

 In addition, despite defendants' assertion that res judicata "controls" our substantial right analysis, it is not insignificant that this appeal arises from the partial denial of a motion
 
 in limine
 
 . A preliminary ruling "on a motion
 
 in limine
 
 is subject to change during the course of trial, depending upon the actual evidence offered at trial."
 
 Xiong v. Marks
 
 ,
 
 193 N.C.App. 644
 
 , 647,
 
 668 S.E.2d 594
 
 , 597 (2008) (citation and quotation marks omitted). Consequently, the trial court may, in its discretion, modify its ruling on the Gentamicin claims before or during trial of this matter.
 

 For the reasons stated above, defendants have failed to establish that their appeal affects a substantial right that will be lost or inadequately addressed absent immediate review. As such, the trial court's order on the motion
 
 in limine
 
 is not subject to immediate appeal.
 

 IV. Conclusion
 

 Because defendants have not demonstrated the existence of a substantial right, their appeal from the trial court's denial of a portion of their motion
 
 in limine
 
 is not eligible for immediate review. Accordingly, defendants' appeal is dismissed as interlocutory.
 

 DISMISSED.
 

 Judges CALABRIA and INMAN concur.
 

 [1]
 

 Rule 41(a)(1) of the North Carolina Rules of Civil Procedure provides "that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed ... an action based on or including the same claim."