IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1115

Filed 19 February 2025

Catawba County, No. 22 CVS 931

JOHN M. FISH, Plaintiff,

v.

WAYNE DOUGLAS STETINA, Defendant.

Appeal by Defendant from judgment entered 3 April 2023 by Judge Nathaniel J. Poovey in Catawba County Superior Court. Heard in the Court of Appeals 13 August 2024.

> *Wesley E. Starnes, PC, by Wesley E. Starnes, for Defendant-Appellant.*
>
> *Pope McMillan, P.A., by Clark D. Tew, for Plaintiff-Appellee.*

CARPENTER, Judge.

Wayne Douglas Stetina ("Defendant") appeals a jury award of compensatory and punitive damages in favor of John M. Fish ("Plaintiff") on his alienation of affection claim. On appeal, Defendant argues the trial court erred by: (1) admitting certain evidence that was barred by the law-of-the-case doctrine; (2) allowing Plaintiff to present evidence from Life360 (the "App"); (3) denying Defendant's motion for directed verdict; (4) submitting the issue of punitive damages to the jury; and (5) admitting evidence of Defendant's out-of-state conduct. After careful review, we discern no error.

## I. Factual and Procedural Background

On 29 June 2020, Plaintiff sued Defendant on claims of alienation of affection and criminal conversation in Catawba County Superior Court. In his complaint, Plaintiff requested compensatory and punitive damages. Among his other allegations, Plaintiff alleged that Defendant had sexual intercourse with Plaintiff's wife ("Wife") before Plaintiff and Wife separated.

On 26 July 2020, Defendant moved for summary judgment on both claims. On 8 November 2020, Defendant amended and refiled his summary judgment motion. On 23 February 2022, the trial court filed an order (the "Order") granting Defendant summary judgment on the criminal conversation claim and denying summary judgment on the alienation of affection claim. In the Order, the trial court "conclude[d] that there [was] no genuine issue as to any material fact related to Plaintiff's claim for criminal conversation." The trial court did not further explain its grant of summary judgment. Plaintiff did not appeal the Order.[1]

On 21 March 2022, Plaintiff voluntarily dismissed his 29 June 2020 complaint. On 4 May 2022, Plaintiff filed a new complaint against Defendant asserting only a

---

[1] Because Plaintiff did not appeal from the Order, we will not opine on the Order.

claim for alienation of affection.[2]  On 6 March 2023, Plaintiff's case proceeded to trial and the evidence tended to show the following.

On 16 January 1998, Plaintiff and Wife married.  During their marriage, Wife became involved in a charity bicycling organization called Ride to Recovery ("R2R").  Through her involvement with R2R, Wife met Defendant, a former Olympic bicyclist.  Defendant, who lived in California, and Wife, who lived in North Carolina, began exchanging phone calls sometime in 2016.  Wife maintained, however, that their phone conversations only concerned R2R.

Over time, Defendant and Wife's phone conversations increased in both frequency and duration.  In January 2016, Defendant and Wife spoke on the phone 9 times for a total of 188 minutes.  Similarly, in February 2016, Defendant and Wife spoke on the phone 10 times for a total of 213 minutes.  In August 2016, Defendant and Wife spoke on the phone 47 times for a total of 776 minutes.  Finally, by March 2017, Defendant and Wife spoke on the phone 138 times for a total of 2,234 minutes.  Prior to separating from Wife, Plaintiff was not aware of Defendant.  Defendant, on the other hand, knew Wife was married to Plaintiff.

Using the App, a global-positioning-system application, Plaintiff learned Wife was at a hotel in Boone, North Carolina in early July 2017.  Defendant was at the

---

[2] The docket number of the "original lawsuit" was 20 CVS 1640. The docket number of the "present lawsuit" is 22 CVS 931.  *See Williams v. Peabody*, 217 N.C. App. 1, 6, 719 S.E.2d 88, 93 (2011).

hotel at the same time as Wife, and the two did not call each other during this period. When Plaintiff testified concerning the App, Defendant's counsel objected, asserting lack of foundation.

In late July and early August of 2017, Wife traveled to Nevada and Colorado. Defendant also traveled to Colorado during the same period but denied seeing Wife during his trip. From late July until 2 August 2017, there were no phone calls between Wife and Defendant. Other than the trip to Boone in early July 2017, when Wife was in Colorado, this was the only time in July and August 2017 in which Defendant and Wife did not call each other.

Plaintiff and Wife separated on 17 August 2017. On that day, Wife left the marital home to live in Plaintiff and Wife's vacation home (the "mountain home") in Blowing Rock, North Carolina. Plaintiff and Wife gave conflicting testimony concerning the inner workings of their marriage and why they eventually separated.

In December 2017, phone records showed that wife was in Irvine, California, where Defendant worked. Again, from 7 December 2017 until 11 December 2017, there were no phone calls between Defendant and Wife. In January 2018, Defendant traveled to North Carolina and stayed with Wife in the mountain home.

Wife denied she and Defendant had sexual relations prior to her separation from Plaintiff. Wife admitted that Defendant stayed with her at the mountain home in January 2018, but she maintained that all of her interactions with Defendant were

platonic. Wife testified that she and Defendant began dating in 2018, and that the pair was still a couple as of the trial.

On 6 February 2018, Plaintiff filed for divorce. After the divorce litigation, the trial court ordered Plaintiff to pay Wife $764,000 in alimony. When Defendant learned that Plaintiff might sue him, he deleted all of his text messages with Wife. He did not, however, delete any other text conversations.

At the close of Plaintiff's alienation of affection case, Defendant moved for a directed verdict. The trial court denied Defendant's motion. At the close of the evidence, Defendant again moved for a directed verdict, which the trial court denied. When instructing the jury, the trial court did not tell the jury that they could or should consider any pre-separation sexual intercourse between Defendant and Wife. The trial court's only mention of "sex" when instructing the jury concerned the sexual relationship between Plaintiff and Wife during their marriage.

On 14 March 2023, the jury found Defendant liable for alienation of affection. The jury awarded Plaintiff $804,000 in compensatory damages and $500,000 in punitive damages. On 3 April 2023, the trial court entered judgment accordingly. On 10 April 2023, Defendant moved for judgment notwithstanding the verdict, and, in the alternative, a new trial. On 10 May 2023, the trial court denied Defendant's motion. On 12 May 2023, Defendant filed written notice of appeal.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7A-27(b)(1) (2023).

## III. Issues

The issues are whether the trial court erred by: (1) admitting certain evidence that was barred by the law-of-the-case doctrine; (2) allowing Plaintiff to present evidence from the App; (3) denying Defendant's motion for directed verdict; (4) submitting the issue of punitive damages to the jury; and (5) admitting evidence of Defendant's out-of-state conduct.

## IV. Analysis

### A. Evidence of Alleged Pre-Separation Sexual Contact

Defendant's first and primary argument on appeal is that the trial court erred by admitting certain evidence because it was barred by the law-of-the-case doctrine. According to Defendant, the Order necessarily concluded, as a matter of law, that Defendant and Wife did not have pre-separation sexual intercourse. Defendant maintains the Order precluded Plaintiff from introducing evidence of phone calls and location data from the App because the evidence was probative of pre-separation sexual intercourse between Defendant and Wife. We agree with Defendant that the Order concluded he did not have pre-separation sexual intercourse with Wife and that Plaintiff was barred from re-litigating this issue in the present case. However, we disagree with Defendant that the issue was re-litigated by virtue of Plaintiff offering evidence of the phone calls and location data from the App.

#### 1. Standard of Review

Whether the law-of-the-case doctrine applies is a question of law. *Royster v. McNamara*, 218 N.C. App. 520, 529–30, 723 S.E.2d 122, 129 (2012). Similarly, whether a trial court "is barred from hearing a specific claim or issue is a question of law unrelated to any specific facts of a case." *Bluebird Corp. v. Aubin*, 188 N.C. App. 671, 678, 657 S.E.2d 55, 61 (2008). This Court reviews questions of law de novo. *State v. Khan*, 366 N.C. 448, 453, 738 S.E.2d 167, 171 (2013) (citing *In re Greens of Pine Glen Ltd.*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)). Under a de novo review, this Court "'considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens*, 356 N.C. at 647, 576 S.E.2d at 319).

This Court " 'review[s] a trial court's rulings . . . on the admission of evidence for an abuse of discretion.' " *Ingram v. Henderson Cnty. Hosp. Corp., Inc.*, 259 N.C. App. 266, 290, 815 S.E.2d 719, 734 (2018) (quoting *State v. Hernendez*, 184 N.C. App. 344, 348, 646 S.E.2d 579, 582 (2007)). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988) (citing *State v. Parker*, 315 N.C. 249, 337 S.E.2d 497 (1985)).

## 2. Criminal Conversation and Alienation of Affection

There are two causes of action relevant to Defendant's law-of-the-case argument: criminal conversation and alienation of affection. Criminal conversation requires a plaintiff to prove that there was an " 'actual marriage between the spouses

and sexual intercourse between defendant and the plaintiff's spouse during the coverture.'" *Nunn v. Allen*, 154 N.C. App. 523, 535, 574 S.E.2d 35, 43 (2002) (quoting *Brown v. Hurley*, 124 N.C. App. 377, 380, 477 S.E.2d 234, 237 (1996)).

Alienation of affection, on the other hand, requires a plaintiff to prove: " '(1) there was a marriage with love and affection existing between the husband and wife; (2) that love and affection was alienated; and (3) the malicious acts of the defendant produced the loss of that love and affection.' " *Id.* at 532–33, 574 S.E.2d at 41–42 (quoting *Pharr v. Beck*, 147 N.C. App. 268, 271, 554 S.E.2d 851, 854 (2001)). "Malice is conclusively presumed by a showing that the defendant engaged in sexual intercourse with the plaintiff's spouse," *Rodriguez v. Lemus*, 257 N.C. App. 493, 495–96, 810 S.E.2d 1, 3 (2018), but malice does not require proof of sexual intercourse, *id.* at 497, 810 S.E.2d at 4 (explaining "[t]his Court has held that intentional acts by a defendant other than sexual intercourse satisfied the malice element of alienation of affection").

The date of separation is critical to both claims as "[n]o act of the defendant shall give rise to a cause of action for alienation of affection or criminal conversation that occurs after the plaintiff and the plaintiff's spouse physically separate with the intent of either the plaintiff or plaintiff's spouse that the physical separation remain permanent." N.C. Gen. Stat. § 52-13(a) (2023).

### 3. Issue Preclusion and Law-of-the-Case Doctrine

First, we must determine which doctrine applies to this case: law-of-the-case or issue preclusion. Although both doctrines generally bar re-litigating issues, they operate differently. On appeal, Defendant urges this Court to apply the law-of-the-case doctrine. For the reasons outlined below, we conclude issue preclusion, not law-of-the-case, is the applicable doctrine.

Issue preclusion, also known as "collateral estoppel" and "estoppel by judgment," prohibits re-litigation of an issue resolved in a final judgment " 'involving identical parties or parties in privity with a party or parties to the prior suit.' " *State v. Safrit*, 145 N.C. App. 541, 552, 551 S.E.2d 516, 523–24 (2001) (quoting *Masters v. Dunstan*, 256 N.C. 520, 524, 124 S.E.2d 574, 576 (1962)). Issue preclusion requires: "(1) a prior suit resulting in a final judgment on the merits; (2) identical issues involved; (3) the issue was actually litigated in the prior suit and necessary to the judgment; and (4) the issue was actually determined." *McDonald v. Skeen*, 152 N.C. App. 228, 230, 567 S.E.2d 209, 211 (2002).

" '[A]n issue is actually litigated, for purposes of collateral estoppel or issue preclusion, if it is properly raised in the pleadings or otherwise submitted for determination and [is] in fact determined.' " *See Williams v. Peabody*, 217 N.C. App. 1, 6, 719 S.E.2d 88, 93 (2011) (quoting *City of Asheville v. State*, 192 N.C. App. 1, 17, 665 S.E.2d 103, 117 (2008)). Concerning the second element, "[a] very close examination of matters actually litigated must be made in order to determine if the underlying issues are in fact identical. If they are not identical, then the doctrine of

collateral estoppel does not apply." *Beckwith v. Llewellyn*, 326 N.C. 569, 574, 391 S.E.2d 189, 191 (1990).

Although the law-of-the-case doctrine is similar to issue preclusion in that it prevents re-litigation of an issue, *see Royster*, 218 N.C. App. at 529–30, 723 S.E.2d at 129, the two doctrines differ in one key respect: issue preclusion prevents re-litigation in a *future* lawsuit, *see Safrit*, 145 N.C. App. at 552, 551 S.E.2d at 523–24 (emphasis added), while the law-of-the-case doctrine prevents re-litigation of an issue in the *same* lawsuit, *see Royster*, 218 N.C. App. at 529–30, 723 S.E.2d at 129. "Lawsuits" are distinguished by their trial-court docket numbers. *See Williams*, 217 N.C. App. at 3–6, 719 S.E.2d at 91–93 (analyzing issue preclusion and referring to the "original lawsuit" and the "present lawsuit" by their distinct trial-court docket numbers).

Here, Plaintiff did not appeal from the Order granting summary judgment in favor of Defendant for the criminal conversation claim. Instead, after the trial court issued the Order, Plaintiff filed a notice of voluntary dismissal and subsequently filed a new complaint asserting only an alienation of affection claim. Because Plaintiff voluntarily dismissed his original lawsuit after the trial court issued the Order, and he did not appeal from the Order, it is a final judgment concerning criminal conversation. *See Green v. Dixon*, 137 N.C. App. 305, 310, 528 S.E.2d 51, 55 (2000) ("In general, a cause of action determined by an order for summary judgment is a final judgment on the merits."); *Veazy v. City of Durham*, 231 N.C. 357, 361, 57 S.E.2d

377, 381 (1950) ("A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court.").

The Order concerned the original lawsuit, docketed as 20 CVS 1640, and this appeal concerns Plaintiff's subsequent lawsuit, docketed as 22 CVS 931. So issue preclusion, not law-of the-case, is the applicable doctrine since we are dealing with two separate lawsuits: the "original lawsuit" and the "present lawsuit." *See Williams*, 217 N.C. App. at 3–6, 719 S.E.2d at 91–93. Therefore, we assess Defendant's assertions through the issue-preclusion framework.

As an aside, we note that the applicable voluntary dismissal principles under Rule 41 do not change our conclusion that issue preclusion is the appropriate doctrine to apply here. The procedural posture of this case is rather unusual and is unlikely to be duplicated. Because Plaintiff filed his notice of voluntary dismissal after presenting arguments on both of his claims at the summary judgment hearing, Plaintiff "rest[ed] his case" within the meaning of Rule 41(a)(1)(i). *See* N.C. R. Civ. P. 41(a)(1)(i) (providing a plaintiff may dismiss an action or claim "by filing a notice of dismissal at any time *before the plaintiff rests his case*") (emphasis added); *see also Troy v. Tucker*, 126 N.C. App. 213, 216, 484 S.E.2d 98, 99 (1997) (concluding "[the] plaintiff's filing of her voluntary dismissal was unauthorized" because she "had rested her case at the summary judgment hearing"). Therefore, Plaintiff's notice of voluntary dismissal was unauthorized and Defendant could have asserted, in his responsive pleading to Plaintiff's new complaint, that Plaintiff's voluntary dismissal

was with prejudice and barred Plaintiff from pursuing the alienation of affection claim in his new lawsuit. *See Pardue v. Darnell*, 148 N.C. App. 152, 157, 557 S.E.2d 172, 176 (2001) (holding where the plaintiff rested his case at trial and then attempted to take a voluntary dismissal, the dismissal operated as a dismissal with prejudice "barring [the plaintiff] from refiling suit against [the] defendant" and entitling defendant "to judgment as a matter of law" in a later-filed action based on the same claim or claims). But Defendant did not assert the affirmative defense of claim preclusion, otherwise known as res judicata, in his responsive pleading to Plaintiff's new complaint. *See Smith v. Polsky*, 251 N.C. App. 589, 595, 796 S.E.2d 354, 359 (2017) ("[A] voluntary dismissal with prejudice is, by operation of law, a final judgment on the merits implicating the doctrine of res judicata."); *Cnty. of Rutherford By & Through Child Support Enf't Agency ex rel. Hedrick v. Whitener*, 100 N.C. App. 70, 73, 394 S.E.2d 263, 264 (1990) ("[R]es judicata is an affirmative defense and must be set forth affirmatively in the pleadings."); *see also* N.C. Gen. Stat. § 1A-1, Rule 8(c) (2023). Thus, Plaintiff's alienation of affection claim properly proceeded to trial.

### 4. Discussion

Now equipped with the appropriate doctrine, we turn to the facts. Here, the Order granted Defendant summary judgment concerning criminal conversation. Although the Order did not explain its grant of summary judgment beyond concluding "that there [was] no genuine issue as to any material fact" for the criminal

conversation claim, it necessarily determined, as a matter of law, that Defendant did not have pre-separation sexual intercourse with Wife.

First, the issue of pre-separation sexual intercourse was "submitted for determination" in the original lawsuit, since Plaintiff alleged it in his complaint. *See Williams*, 217 N.C. App. at 6, 719 S.E.2d at 93. Second, pre-separation sexual intercourse is an element of criminal conversation, which Plaintiff also alleged in his complaint. *See Nunn*, 154 N.C. App. at 535, 574 S.E.2d at 43. Finally, Defendant admitted that Plaintiff and Wife's marriage was valid. Thus, the only disputed element of criminal conversation was Defendant's alleged pre-separation sexual intercourse with Wife. *See id.* at 535, 574 S.E.2d at 43. Accordingly, since the Order granted Defendant summary judgment concerning criminal conversation, the trial court concluded that Defendant did not have pre-separation sexual intercourse with Wife. *See id.* at 535, 574 S.E.2d at 43.

Because the issue of pre-separation sexual intercourse was resolved by the trial court in the Order, a final judgment, *see Green*, 137 N.C. App. at 310, 528 S.E.2d at 55, and was necessary to the judgment, *see McDonald*, 152 N.C. App. at 230, 567 S.E.2d at 211, issue preclusion principles applied. Accordingly, the parties were precluded from re-litigating the issue of whether Defendant and Wife had pre-separation sexual intercourse.

Here, the trial court complied with issue-preclusion principles and did not re-litigate the issue of whether Defendant and Wife had pre-separation sexual

intercourse. The trial court did not instruct the jury to consider pre-separation sexual intercourse and the only mention of "sex" in the instructions concerned the sexual relationship between Plaintiff and Wife.

Defendant, however, argues that issue preclusion entitles him to more. Defendant asserts that issue preclusion prohibited Plaintiff from offering any evidence that *may* be probative of pre-separation sexual intercourse between Defendant and Wife. According to Defendant, Plaintiff was precluded from introducing evidence of Defendant and Wife's phone calls and their locations via the App because such evidence could have persuaded the jury that Defendant and Wife had pre-separation sexual intercourse, which the Order already rejected. In Defendant's view, by introducing this evidence, Plaintiff was "relitigating" the issue. We disagree with Defendant.

Issue preclusion does indeed prevent the re-litigation of issues, but issues and evidence are not the same. Prohibiting re-litigation means that certain legal theories are predetermined, as a matter of law. *See McCallum v. North Carolina Coop. Extension Serv. of N.C. State Univ.*, 142 N.C. App. 48, 56, 542 S.E.2d 227, 234 (2001). It does not mean, however, that Plaintiff's evidence was inadmissible because it *may* have been probative of whether Defendant and Wife had pre-separation sexual intercourse. The relevant inquiry is whether pre-separation sexual intercourse was indeed litigated in the subsequent action. *See Safrit*, 145 N.C. App. at 552, 551 S.E.2d

at 523–24 (quoting *Masters*, 256 N.C. at 524, 124 S.E.2d at 576). In the instant case, as indicated above, it was not.

Under Defendant's approach, trial courts would need to examine each piece of evidence to discern whether it is probative of an already litigated issue. Which begs the question: How probative? We decline to open Pandora's box. Accordingly, the trial court did not violate the doctrine of issue preclusion by admitting Plaintiff's phone-call and location evidence from the App that may have been probative of pre-separation sexual intercourse. *See McDonald*, 152 N.C. App. at 230, 567 S.E.2d at 211.

## B. Location Evidence from the App

Next, Defendant argues that the trial court erred by admitting evidence from the App because the evidence lacked foundation for admission as a business record and was thus inadmissible hearsay. Defendant argues that he objected to the App evidence "on the grounds that this evidence was hearsay." We disagree with Defendant and dismiss his argument as unpreserved.

"In order to preserve an issue for appellate review, the appellant must have raised that specific issue before the trial court to allow it to make a ruling on that issue." *Regions Bank v. Baxley Com. Props., LLC*, 206 N.C. App. 293, 298–99, 697 S.E.2d 417, 421 (2010) (citing N.C. R. App. P. 10(b)(1)); *see State v. Harris*, 253 N.C. App. 322, 327, 800 S.E.2d 676, 680 (2017) ("The specific grounds for objection raised before the trial court must be the theory argued on appeal because the law does not

permit parties to swap horses between courts in order to get a better mount in the [appellate court].") (internal quotation marks and citations omitted). In order to preserve an issue, the objection must "clearly present[] the alleged error to the trial court." N.C. Gen. Stat. § 8C-1, Rule 103(a)(1) (2023).

Additionally, "[i]t is well-settled that arguments not presented in an appellant's brief are deemed abandoned on appeal." *Davignon v. Davignon*, 245 N.C. App. 358, 361, 782 S.E.2d 391, 394 (2016) (citing N.C. R. App. P. 28(b)(6)); *see State v. Evans*, 251 N.C. App. 610, 625, 795 S.E.2d 444, 455 (2017) (deeming an argument abandoned because the appellant did "not set forth any legal argument or citation to authority").

Here, Plaintiff offered evidence from the App to prove that Defendant and Wife were simultaneously in the same location. Below is the relevant testimony:

> **Plaintiff's Counsel**: So let's talk about what happened in July of 2017. What occurred in that month?
>     . . . .
> **Plaintiff**: I looked at Life360 and I thought—
> **Defense Counsel**: Objection.
> **Plaintiff**: – isn't it odd –
> **Defense Counsel**: No foundation laid for Life360.
> **Trial Court**: Sustained.
> **Plaintiff's Counsel**: Okay. Let's talk about this for a second. You have an application on your phone that you've discussed called Life360; correct?
> **Plaintiff**: Correct.
> **Plaintiff's Counsel**: What is that application?
> **Plaintiff**: It's an application that allows family members or whoever to track one another's location. We primarily had it for the safety of our children.

**Plaintiff's Counsel**: How long had you and [Wife] used Life360?
**Plaintiff**: Four or five years or more.
**Plaintiff's Counsel**: Okay. And did [Wife] –
**Plaintiff**: Probably once they started driving.
**Plaintiff's Counsel**: Did [Wife] have access to Life360 on her phone as well?
**Plaintiff**: Yes.
**Plaintiff's Counsel**: Was Life360, this application, something that tracked both your location and [Wife's] location?
**Plaintiff**: Yes.
**Defense Counsel**: Objection.
**Plaintiff's Counsel**: As well as your daughters?
**Plaintiff**: Yes.
**Defense Counsel**: Object for the record.
**Trial Court**: Overruled.
**Plaintiff's Counsel**: How would this application send you notifications, or why would this application send you notifications?
**Defense Counsel**: Objection.
**Trial Court**: Overruled.

Defendant specifically objected to the App evidence for lack of foundation. Defendant later lodged several general objections without specifying a basis. Now Defendant argues that his "foundation" objection concerned the requisite foundation to satisfy the business-record exception to the hearsay rule.

Usually, objections for lack of foundation concern the "authentication or identification" necessary to show that the proposed evidence "is what its proponent claims." *See* N.C. Gen. Stat. § 8C-1, Rule 901(a) (2023). Here, Defendant's counsel merely objected to the App based on lack of "foundation." Defendant's counsel did not mention hearsay. Without specifying that a "foundation" objection actually concerns

a hearsay exception, the objection does not "clearly present[]" a hearsay question to the trial court. *See id.*, Rule 103(a)(1). Therefore, Defendant did not preserve a hearsay argument, *see id.*, and he cannot "swap horses" and make a hearsay argument on appeal, *see Harris*, 253 N.C. App. at 327, 800 S.E.2d at 680.

Further, any authentication argument under Rule 901 is now abandoned. On appeal, Defendant's sole argument about the App concerns hearsay and the business-record exception, and he only cites hearsay authorities. Therefore, because Defendant cites no authority and makes no argument concerning authentication, he abandoned his only preserved argument. *See Evans*, 251 N.C. App. at 625, 795 S.E.2d at 455; *see* N.C. R. App. P. 28(b)(6).

### C. Motion for Directed Verdict

In his third argument, Defendant asserts that the trial court erred by denying his motion for a directed verdict because Plaintiff offered no evidence of malice. Defendant echoes his first argument here, asserting that evidence of Defendant and Wife's phone call and location records must be precluded, and thus Plaintiff offered no evidence of malice. We disagree with Defendant.

We review directed-verdict rulings de novo. *Yorke v. Novant Health, Inc.*, 192 N.C. App. 340, 351, 666 S.E.2d 127, 135 (2008) (citing *Denson v. Richmond Cty.*, 159 N.C. App. 408, 411, 583 S.E.2d 318, 320 (2003)). A directed verdict "is appropriate only when the issue submitted presents a question of law based on admitted facts where no other conclusion can reasonably be reached." *Ferguson v. Williams*, 101

N.C. App. 265, 271, 399 S.E.2d 389, 393 (1991) (citing *Seaman v. McQueen*, 51 N.C. App. 500, 503, 277 S.E.2d 118, 120 (1981)).  In making this determination:

> the trial court must view all the evidence that supports the non-movant's claim as being true and that evidence must be considered in the light most favorable to the non-movant, giving to the non-movant the benefit of every reasonable inference that may legitimately be drawn from the evidence with contradictions, conflicts, and inconsistencies being resolved in the non-movant's favor.

*Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 369, 329 S.E.2d 333, 337–38 (1985) (citing *Farmer v. Chaney*, 292 N.C. 451, 452–53, 233 S.E.2d 582, 584 (1977)).

Concerning alienation of affection, "[a] malicious act has been loosely defined to include any intentional conduct that would probably affect the marital relationship." *Beavers v. McMican*, 385 N.C. 629, 635, 898 S.E.2d 690, 696 (2024) (quoting *Rodriguez*, 257 N.C. App. at 495, 810 S.E.2d at 1).

Here, as detailed above, the trial court did not err by admitting evidence of Defendant and Wife's phone call and location records.  The jury could not have concluded this evidence proved that Defendant and Wife had pre-separation sexual intercourse, because issue preclusion prevented that issue from being presented to the jury for determination.  Nonetheless, when viewed "in the light most favorable to" Plaintiff, *see Bryant*, 313 N.C. at 369, 329 S.E.2d at 337–38, a reasonable jury could still conclude that Defendant and Wife's telephone conversations and repeated visits amounted to "intentional conduct that would probably affect the marital relationship" between Plaintiff and Wife, *see Beavers*, 385 N.C. at 635, 898 S.E.2d at 696.

Therefore, the trial court did not err by denying Defendant's motion for a directed verdict. *See Ferguson*, 101 N.C. App. at 271, 399 S.E.2d at 393.

**D. Punitive Damages**

In his next argument, Defendant asserts that the trial court erred by submitting the issue of punitive damages to the jury. We disagree with Defendant.

We review the legality of jury instructions de novo. *State v. Barron*, 202 N.C. App. 686, 694, 690 S.E.2d 22, 29 (2010). For a jury to award punitive damages under an alienation of affection theory, "there must be evidence of circumstances of aggravation beyond the proof of malice necessary to satisfy the elements of the tort to sustain a recovery of compensatory damages." *Nunn*, 154 N.C. App. at 538, 574 S.E.2d at 44–45 (quoting *Ward v. Beaton*, 141 N.C. App. 44, 49–50, 539 S.E.2d 30, 34 (2000)). "Evidence of [pre-separation] 'sexual relations' has been held to satisfy this requirement." *Id.* at 538, 574 S.E.2d at 45 (citing *Ward*, 141 N.C. App. at 49–50, 539 S.E.2d at 34). In the absence of such evidence, a plaintiff faces a greater challenge in submitting the punitive-damages question to the jury. *See Cottle v. Johnson*, 179 N.C. 426, 431, 102 S.E. 769, 771 (1920) (ordering a new trial where plaintiff received punitive damages for alienation of affection in a case where the plaintiff did not prove criminal conversation).

For example, evidence of "problems caused in [a] marriage and increase[ed] amount[] of time spent with plaintiff's wife," in the absence of evidence of pre-separation sexual intercourse, was held to be insufficient to send the punitive-

damages question to the jury. *Chappell v. Redding*, 67 N.C. App. 397, 403, 313 S.E.2d 239, 243 (1984).

Here, as detailed above, the Order settled the question of whether Defendant and Wife had pre-separation sexual intercourse: The trial court determined they did not. *See Nunn*, 154 N.C. App. at 535, 574 S.E.2d at 43; *McDonald*, 152 N.C. App. at 230, 567 S.E.2d at 211. Nonetheless, Plaintiff still offered sufficient evidence to send the punitive-damages question to the jury.

Specifically, Plaintiff offered evidence that Defendant deleted all of his text messages with Wife upon learning that he might be sued, thereby intentionally spoliating evidence. Such evidence goes beyond "the malice implied by law from the conduct of defendant in alienating the affections between the spouses." *Chappell*, 67 N.C. App. at 403, 313 S.E.2d at 243.

Thus, Plaintiff established sufficient evidence of aggravation to send the punitive-damages question to the jury even in the absence of evidence of pre-separation sexual relations. Accordingly, the trial court did not err by sending the punitive-damages question to the jury.

### E. Out-of-State Conduct

In his final argument, Defendant asserts that the trial court erred by admitting evidence purporting to show that he met with Wife in Nevada, a state that does not recognize the tort of alienation of affection. According to Defendant, Plaintiff should have been barred from introducing such evidence because the question of where the

tortious injury occurred was not at issue in this case and the jury was permitted to find alienation of affection based upon actions that occurred in Nevada. We disagree with Defendant.

To support his argument, Defendant cites two cases: *Darnell v. Rupplin*, 91 N.C. App. 349, 371 S.E.2d 743 (1988) and *Jones v. Skelley*, 195 N.C. App. 500, 673 S.E.2d 385 (2009). Defendant's reliance on these cases, however, is misplaced. Defendant's challenge is an evidentiary one. The rules Defendant cites from *Darnell* and *Jones* concern the trial court's determination of what substantive law applies in an alienation of affection case and whether a plaintiff can establish a valid cause of action for the same. *See Darnell*, 91 N.C. App. at 351, 371 S.E.2d at 745; *Jones*, 195 N.C. App. at 506, 673 S.E.2d at 389–90. Choice of law concepts are distinct from admissibility of evidence. Consequently, we focus our attention on the relevant inquiry—whether the evidence was admissible.

" 'The standard of review for admission of evidence over objection is whether it was admissible as a matter of law, and if so, whether the trial court abused its discretion in admitting the evidence.' " *State v. James*, 224 N.C. App. 164, 166, 735 S.E.2d 627, 629 (quoting *State v. Bodden*, 190 N.C. App. 505, 512, 661 S.E.2d 23, 27 (2008)). An abuse of discretion occurs where the trial court's " 'ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.' " *James*, at 166, 735 S.E.2d at 629 (quoting *State v. Elliot*, 360 N.C. 400, 419, 628 S.E.2d 735, 748 (2006)).

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2023). "Irrelevant evidence is evidence 'having no tendency to prove a fact at issue in the case.'" *State v. Davis*, 287 N.C. App. 456, 465, 883 S.E.2d 98, 105 (2023) (quoting *State v. Hart*, 105 N.C. App. 542, 548, 414 S.E.2d 364, 368 (1992)). Generally, relevant evidence is admissible, unless the Constitution, the legislature, or the Rules of Evidence provide otherwise. *See* N.C. Gen. Stat. § 8C-1, Rule 402 (2023). Additionally, under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2023).

In *Darnell* and *Jones*, each of the defendant's out-of-state conduct was relevant to the issue of where the tortious injury occurred—a necessary determination to establish a valid cause of action and to ascertain which state's law applies. *See Hayes v. Waltz*, 246 N.C. App. 438, 443, 784 S.E.2d 607, 613 (2013) (explaining that a plaintiff must show that the alienating conduct occurred in either North Carolina or another state that recognizes the tort to establish a valid cause of action for alienation of affection); *see also Jones*, 195 N.C. App. at 506, 673 S.E.2d at 389–90 (explaining

that the law of the state where the tortious injury occurred, that is, where the alleged alienating conduct took place, is the applicable substantive law).

Specifically, in *Darnell*, the jury considered evidence of the defendant's acts occurring in four jurisdictions: North Carolina, Maryland, Virginia, and Washington, D.C. 91 N.C. App. at 351, 371 S.E.2d at 745. Of these, North Carolina was the only jurisdiction that recognized alienation of affection. *Id.* at 351, 371 S.E.2d at 745. On appeal, the defendant contended that a material issue of fact existed concerning in which jurisdiction the tort of alienation of affection took place and argued that this issue should have been submitted to the jury for determination. *Id.* at 350, 371 S.E.2d at 744. We held that "it is for the jury, *considering all the evidence*, to determine in which [jurisdiction] plaintiff's injury occurred." *Id.* at 354, 371 S.E.2d at 747 (emphasis added). Notably, we did not hold, or in any way indicate, that the evidence of the defendant's conduct occurring in Maryland, Virginia, and Washington, D.C. was inadmissible.

Similarly, in *Jones*, the defendant's alleged alienating conduct occurred in two states: North Carolina and South Carolina. 195 N.C. App. at 505–08, 673 S.E.2d at 389–90. Of the two, North Carolina was the only state that recognized alienation of affection. *Id.* at 505, 673 S.E.2d at 389. In *Jones*, we concluded that the trial court improperly granted summary judgment in favor of the defendant, explaining "a material question of fact exists as to whether the alleged alienation of [spouse's] affections occurred in North Carolina or South Carolina . . . ." *Id.* at 507–08, 673

S.E.2d at 389–90. Similarly, we did not hold, or in any way indicate, that the evidence of the defendant's South Carolina conduct was inadmissible.

Based on these cases, it is clear to us that in alienation of affection cases where the defendant's conduct spans multiple states, the question of where the injury occurred is, in most instances, at issue. Therefore, it is a question for the jury "*considering all the evidence.*" *See Darnell*, 91 N.C. App. at 371, 354 S.E.2d at 747 (emphasis added). In such cases, all of the defendant's alleged alienating acts, including those acts occurring in states that do not recognize the tort, are potentially relevant for determining where the injury occurred.

Defendant, however, contends that "no such issue existed in the present case for the jury to determine." In other words, Defendant suggests that there was no dispute over whether Plaintiff's injury occurred in North Carolina, so the evidence of his Nevada conduct should have been excluded because it could not support Plaintiff's claim. By doing so, Defendant necessarily concedes that the injury took place in North Carolina. But Defendant's assertion overlooks a critical point: the evidence of his out-of-state conduct was admissible, regardless of whether an issue existed as to where the injury occurred.

Here, as in *Darnell* and *Jones*, Defendant's conduct spanned multiple states: North Carolina, Nevada, and Colorado. Like in *Darnell* and *Jones*, North Carolina is the only state that recognizes alienation of affection. *Darnell*, 91 N.C. App. at 351, 371 S.E.2d at 745; *Jones*, 195 N.C. App. at 505, 673 S.E.2d at 389. So, it was

Plaintiff's burden to prove that the tortious injury, the alienating conduct, occurred in North Carolina. *See Bassiri v. Pilling*, 287 N.C. App. 538, 546, 884 S.E.2d 165, 171 (2023) (explaining that if the defendant's conduct spans multiple states and North Carolina is the only state involved that recognizes the tort of alienation of affection "the sufficiency of the claim . . . [is] dependent upon whether the alleged injury occurred in North Carolina"). Consequently, the jury was tasked with determining in which state the tortious injury occurred. Therefore, the evidence of Defendant's out-of-state conduct was admissible for this purpose. *See Darnell*, 91 N.C. App. at 371, 354 S.E.2d at 747.

If we were to indulge the argument that the question of where the injury occurred was not at issue in this case, the evidence was, nonetheless, admissible because it was relevant and not otherwise barred. *See* N.C. Gen. Stat. § 8C-1, Rules 401 and 402. Defendant's Nevada conduct, "makes the existence of any fact that is of consequence to the determination of [alienation of affection] more or less probable than it would be without the evidence." *See* N.C. Gen. Stat. § 8C-1, Rule 401. Stated differently, Defendant's Nevada conduct makes it more likely to be true that Defendant "produced the loss of [Plaintiff and Wife's] love and affection." *See Nunn*, 154 N.C. App. at 533, 574 S.E.2d 35, 41–42 (citations omitted). Therefore, the evidence was relevant and because there was no existing rule barring the evidence, it was admissible, subject to any Rule 403 concerns. *See* N.C. Gen. Stat. § 8C-1, Rules 402 and 403. The trial court considered the applicable law and, in its discretion,

determined the probative value of the evidence was not "substantially outweighed" by the risk of "unfair prejudice, confusion of the issues, or misleading the jury . . . ." N.C. Gen. Stat. § 8C-1, Rule 403.

If Defendant was concerned that the jury would improperly base its verdict on acts that would not support a claim for alienation of affection, Defendant should have requested a limiting instruction to this end; Defendant did not do so. *See State v. Coffey*, 326 N.C. 268, 286, 389 S.E.2d 48, 59 (1990) ("The admission of evidence which is competent for a restricted purpose without limiting instructions will not be held to be error in the absence of a request by the defendant for such limiting instructions."). Accordingly, the trial court did not abuse its discretion by admitting the evidence.

## V. Conclusion

In sum, the trial court did not violate the doctrine of issue preclusion by admitting Plaintiff's phone-call and location evidence, did not err by denying Defendant's motion for a directed verdict, did not err by sending the punitive-damages question to the jury, and did not err by admitting evidence of Defendant's out-of-state conduct. The issue of whether the trial court erred by admitting evidence from the App is not preserved for our review.

NO ERROR.

Judges ZACHARY and WOOD concur.